UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY PHILLIP PUCKETT,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SACRAMENTO, et al.,<br><br>Defendants. | No. 2:22-cv-0350 KJM DB<br><br><br><br>ORDER |

Pursuant to Local Rule 302(c)(1) this matter came before the undersigned on February 23, 2024, for hearing of plaintiff's motion to compel. (ECF No. 85.) Attorneys Hilary Soloff and Ryan Snyder appeared on behalf of plaintiff, who was also present. Attorney John Whitefleet appeared on behalf of defendants. After hearing oral argument, plaintiff's motion was taken under submission.

In 2001, plaintiff was prosecuted and convicted of robbery and murder. (ECF No. 36 at 2.) Almost 19 years later, plaintiff's conviction was vacated. (Id.) A year later plaintiff was found factually innocent. (Id.) This action alleges defendants violated plaintiff's constitutional rights by withholding or ignoring exonerating evidence. (Id.) Plaintiff's motion seeks to compel responses to plaintiff's interrogatories. (ECF No. 78 at 1.)

////

1

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries." Gonzales v. Google, Inc., 234 F.R.D. 674, 679-80 (N.D. Cal. 2006). "If relevance is in doubt, courts should err on the side of permissive discovery." Wiginton v. CB Richard Ellis, Inc., 229 F.R.D. 568, 577 (N.D. Ill. 2004)

The party resisting discovery 'has the burden to show that discovery should not be allowed, and the burden of clarifying, explaining, and supporting its objections.'" Laub v. Horbaczewski, 331 F.R.D. 516, 521 (C.D. Cal. 2019) (quoting Oakes v. Halvorsen Marine Ltd., 179 F.R.D. 281, 283 (C.D. Cal. 1998)). Moreover, "objections not raised in a written response to discovery may not be raised for the first time in a discovery motion." O. L. v. City of El Monte, Case No. 2:20-cv-0797 RGK (JDEx), 2021 WL 926105, at *3 (C.D. Cal. Jan. 11, 2021). "Similarly, objections asserted in discovery responses but not raised in briefing on a discovery motion are also waived." (Id.)

First, the undersigned notes that one of plaintiff's arguments was that defendants have failed to verify their discovery responses since November of 2023. (JS (ECF No. 78) at 23.) In response, defendants state simply "Defendants will comply." (Id.) Why defendants failed to do so previously and why defendants forced plaintiff to raise this issue in a motion to compel is difficult to understand.

Moreover, "[p]leadings are not an opportunity for lawyers to throw things against the wall and see what sticks." Greenspan v. Platinum Healthcare Group, LLC, Case No. 2:20-cv-5874 JDW, 2021 WL 978899, at *3 (E.D. Pa. Mar. 3, 2021). That appears, however, to have been defendants' strategy in opposing plaintiff's motion by offering up numerous vague and conclusory arguments in opposition, hoping that maybe one such argument will resonate and that the court would provide the discussion and authority lacking from defendants' briefing.

For example, defendants begin by asserting that plaintiff's "definition of 'Brady Violation' is overly complicated[.]" (JS (ECF No. 78) at 8.) Defendants then provide what plaintiff has "defined as 'Brady Violation.'" (Id.) Defendants state:

> Plaintiff defined as "Brady Violation" "a failure to disclose for any length of time, whether deliberately or inadvertently, Exculpatory Evidence as required by Brady v Maryland, 373 U.S. 83 (1963), and/or its progeny. For the avoidance of doubt, the term "Incident related to a Brady Violation" encompass, but is not limited to, (i) judicial findings, orders, or analysis, in any civil or criminal state or federal proceeding, that a Brady Violation occurred or would occur but for disclosure, (ii) any finding, determination, conclusion, or statement by any Person that a Brady Violation occurred, is believed to have occurred, or may have occurred, (iii) consideration, discussion, or analysis, by any Person, of whether withholding Exculpatory Evidence could constitute a Brady Violation or could otherwise violate any duty to disclose Exculpatory Evidence; and (iv) allegations that Exculpatory Evidence was wrongfully withheld from a criminal defendant or would be wrongfully withheld but for a demanded disclosure, irrespective of whether such allegations arise in a criminal proceeding, civil litigation, or any other context, and irrespective of the specific form or manner in which such allegations are made."

(JS (ECF No. 78) at 9.)

Defendants then state that they "objected to this definition as compound . . . calls for speculation, is overly broad . . . and . . . would appear to seek attorney-work product." (Id.) Defendants then simply move on to the next objection, without offering any argument, explanation, analysis, or authority in support of this assertion.

Defendants assert that plaintiff's definition of "Incident . . . . is so vague and overly broad so as to render every request that uses it unintelligible." (Id.) Plaintiff's definition of "Incident" was an "actual, potential or alleged violation of a law, policy, or procedure" as it related to a Brady violation. (Id. at 6, 9.) The undersigned finds plaintiff's definition neither vague nor overly broad.

The next subheading offered by defendants states simply that "The motion to compel should be denied for various reasons." (Id. at 10.) The argument that follows again contains vague and conclusory assertions. Defendants put forth a "Definition objections" asserting "that the objections to the definitions render this interrogatory unintelligible." (Id.) This utterly confusing sentence is followed by no authority or explanation.

3

Defendants next assert that because plaintiff seeks "numerous subcategories of types of records . . . such creates improper subparts." (Id.) Thereafter, defendants quote legal authority that is contra to their argument. (Id.) In this regard, the subparts to plaintiff's questions seeks information that is logically and factually related to issue of defendants' potential Brady violations and, therefore, are not improper subparts. See generally, Thompson v. Regional West Medical Center, No. 8:06cv581, 2007 WL 3232603, at *4 (D. Neb. Oct. 31, 2007) ("The court finds the interrogatory is to be counted as a single question and is in compliance with our local rule because there is a purposeful and strong relationship between the various information that is requested."); Ginn v. Gemini, Inc., 137 F.R.D. 320, 322 (D. Nev. 1991) ("interrogatory subparts are to be counted as part of but one interrogatory for the purposes of Local Rule 190, subd. 1(c) if they are logically or factually subsumed within and necessarily related to the primary question"); Clark v. Burlington Northern R.R., 112 F.R.D. 117, 118 (N.D. Miss. 1986) ("an interrogatory is to be counted as but a single question for purposes of Local Rule C–12, even though it may call for an answer containing several separate bits of information, if there is a direct relationship between the various bits of information called for").

In opposing plaintiff's Interrogatory No 5, which relates to a document plaintiff obtained through a Public Records Act request, defendants repeat many of the other arguments addressed herein. However, they also argue that "Plaintiff's dissatisfaction should be pursued through state court," that "there is no authority that allows discovery into such extra litigation matters," and that "no federal court . . . has allowed discovery into how documents were produced" under a Public Records Act ("PRA") request. (JS (ECF No. 78) at 14.)

Defendants' argument is entirely unclear and unsupported by citation to any legal authority. It is true that "[a] challenge that the State of California or one of its departments has failed to respond to a PRA request or is withholding records under the PRA may be made in the state superior courts." Calhoun v. Cruz, No. 2:20-cv-2209 DB P, 2022 WL 1527401, at *2 (E.D. Apr. 26, 2022). Plaintiff, however, is not challenging a response to a PRA request.

To the contrary, plaintiff made a PRA request, received in response a spreadsheet "which counsel for County indicated were 'possible matches' to prosecutorial misconduct claim

1  information'" and plaintiff now seeks discovery from the County with respect to the creation of
2  that document. (JS (ECF No. 78) at 12.) Civil discovery is the tool through which to obtain that
3  information. See generally Doubleday v. Ruh, 149 F.R.D. 601, 611 (E.D. Cal. 1993) ("Civil
4  discovery requests such as made by plaintiff here are to be processed pursuant to ordinary
5  discovery law.").

6  Defendants' most egregious example of the reliance on vague and conclusory argument is
7  with respect to the "Attorney client/work product" privileges. (JS (ECF No. 78) at 15.) The
8  entirety of defendants' argument reads "To the extent any compilation or effort to produce the
9  document was made in consult with the County Counsel's office, such implicates attorney client
10  or work product." (Id.)

11  To say that defendants' argument and analysis is woefully inadequate is an
12  understatement. Defense counsel undoubtedly is aware that "'[t]he party asserting the privilege
13  has the burden of making a prima facie showing that the privilege protects the information that
14  the party intends to withhold.'" Diamond State Ins. Co. v. Rebel Oil Co., Inc., 157 F.R.D. 691,
15  698 (D. Nev. 1994) (quoting In re Grand Jury Investigation, 974 F.2d 1068, 1071 (9th Cir.
16  1992)). "In considering whether a proponent of the privilege is entitled to protection, the Court
17  must place the burden of proof squarely upon the party asserting privilege. Accordingly, the
18  proponent must provide the court with enough information to enable the court to determine
19  privilege, and the proponent must show by affidavit that precise facts exist to support the claim of
20  privilege." North Carolina Elec. Membership Corp. v. Carolina Power & Light Co., 110 F.R.D.
21  511, 515 (M.D. N.C. 1986)

22  "In requiring a party to prove the factual basis for its claims of privilege, the courts
23  generally look to a showing based on affidavits or equivalent statements that address each
24  document at issue," however, a party may instead rely on "an adequately detailed privilege log in
25  conjunction with evidentiary submissions to fill in any factual gaps." Bowne of New York City,
26  Inc. v. AmBase Corp., 150 F.R.D. 465, 473-74 (S.D. N.Y. 1993). The privilege log should state
27  (a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities
28  shown on the document to have received or sent the document, (d) all persons or entities known

to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated, as well as provide information of the subject matter of each document.  See In re Grand Jury Investigation, 974 F.2d at 1071; see also Allendale Mut. Ins. Co. v. Bull Data Systems, Inc., 145 F.R.D. 84, 88 (N.D. Ill. 1992) (privilege log "should identify the date, the author and all recipients, along with their capacities. The log should also describe the document's subject matter, purpose for its production, and a specific explanation of why the document is privileged or immune from discovery.  These categories, especially this last category, must be sufficiently detailed to allow the court to determine whether the discovery opponent has discharged its burden.").

Plaintiff's Interrogatory No. 3 seeks documents used to educate or train defendants' employees of their duties under Brady.  (JS (ECF No. 78) at 15.)  In opposition, defendants argue that plaintiff has failed "to identify any good faith basis to inquire how the County itself (as opposed from the District Attorney or Sheriff's office) might have relevant training information related to Brady information[.]"  (Id.)  Once again, defendants' argument is vague, conclusory, confusing, and lacking in specificity and reliance on legal authority.

Finally, the defendants repeatedly assert that plaintiff's discovery requests are not relevant or proportional to the needs of this case.  (Id. at 10-12, 14-15, 17.)  The undersigned finds those arguments entirely without merit.  "District courts have broad discretion to determine relevancy for discovery purposes."  Scherer v. FCA US, LLC, 538 F.Supp.3d 1002, 1004 (S.D. Cal. 2021).  In evaluating proportionality, the court looks to "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

"A complaint guides the parties' discovery[.]"  Coleman v. Quaker Oats Co., 232 F.3d 1271, 1292 (9th Cir. 2000).  As explained by the assigned District Judge, the complaint alleges that plaintiff was incarcerated based on convictions for robbery and murder for roughly 20 years, despite being factually innocent, as a result of defendants' withholding or ignoring exonerating evidence.  (ECF No. 36 at 2.)  The complaint also describes two similar instances in which

"Sheriff's deputies committed similar constitutional violations in the form of evidence suppression" and identifies "79 civil rights violations over seven years[.]" (Id. at 13-14.) The complaint also alleges that the "Sheriff's Office has not disciplined officers who deprive persons of their constitutional rights." (Id. at 14.)

Considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit, the undersigned finds plaintiff's discovery to be both relevant and proportional to the needs of this case.

## CONCLUSION

Accordingly, for the reasons stated above and at the February 23, 2024 hearing, IT IS HEREBY ORDERED that:

1. Plaintiff's January 19, 2024 motion to compel (ECF No. 67) is granted; and

2. Defendants shall produce responsive discovery within fourteen days of the date of this order.[1]

Dated: February 27, 2024

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB/orders/orders.civil/puckett0350.oah2.0223

---

[1] At the February 23, 2024, the undersigned raised the issue of monetary sanctions against defendants. The parties have been ordered to brief that issue and a separate order addressing monetary sanctions will issue. (ECF No. 91.)

7