1

2

3

4

5

6

7

8

9                       UNITED STATES DISTRICT COURT

10                  FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12    JEREMY PHILLIP PUCKETT,                 No.  2:22-cv-0350 KJM DB

13                    Plaintiff,

14          v.                                 ORDER AND CERTIFICATION OF FACTS

15    COUNTY OF SACRAMENTO, et al.,

16                    Defendants.

17

18          On June 7, 2024, this action came for hearing before the undersigned on plaintiff's motion

19    to find defendants in contempt pursuant to Local Rule 302(c)(1).  (ECF No. 123.)  Attorneys

20    Rachel June-Graber and Harrison Frahn appeared on behalf of plaintiff, who was also present.

21    Attorney John Whitefleet appeared on behalf of defendants.  (ECF No. 193.)  After hearing oral

22    argument, plaintiff's motion was taken under submission.  Having considered the parties' briefing

23    and oral argument, the undersigned orders as follows.

24                                   **BACKGROUND**

25          In 2001, plaintiff was convicted of the robbery and murder of Anthony Galati.  (ECF No.

26    36 at 2[1].)  Plaintiff, however, was factually innocent.  (Id.)  After being incarcerated for more than

27    ─────────────────────
      [1] Page number citations such as this one are to the page number reflected on the court's CM/ECF
28    system and not to page numbers assigned by the parties.

                                        1

1   19 years for a crime he did not commit plaintiff's conviction was vacated.  (Id.)  Plaintiff

2   commenced this action on February 22, 2022.  (ECF No. 1.)  Broadly speaking, plaintiff is

3   proceeding on claims that defendants County of Sacramento ("County"), Sacramento County

4   District Attorney's Office ("DA"), and the Sacramento County Sheriff's Office ("Sheriff's

5   Office") withheld or ignored evidence exonerating plaintiff.  (ECF No. 36 at 2.)

6        Moreover, the complaint describes two similar instances in which "Sheriff's deputies

7   committed similar constitutional violations in the form of evidence suppression" and identifies

8   "79 civil rights violations over seven years[.]"  (Id. at 13-14.)  The complaint alleges that the

9   "Sheriff's Office has not disciplined officers who deprive persons of their constitutional rights."

10  (Id. at 14.)

11       The assigned District Judge has found that these allegations support claims for Monell

12  liability against defendants County of Sacramento and the Sheriff's Office based on a pattern of

13  incidents in which Sheriff's deputies committed similar constitutional violations, as well as for

14  the failure to discipline officers who deprived persons of their constitutional rights.  (Id. at 13-16.)

15  The complaint's allegations also support a claim for Monell liability against the DA based on an

16  alleged failure to discipline prosecutors who committed Brady violations.[2]  (Id. at 16-17.)

17       On January 12, 2024, plaintiff filed a motion to compel production of documents.  (ECF

18  No. 63.)  On January 26, 2024, the parties filed a Joint Statement.  (ECF No. 71.)  Therein,

19  defense counsel asserted that "Defendants have provided amended responses that essentially

20  states there are no responsive documents," arguing that this rendered plaintiff's motion "moot."

21  (Id. at 5.)

22       The parties appeared before the undersigned on February 9, 2024, for hearing of plaintiff's

23  motion.  (ECF No. 77.)  At the hearing defense counsel reiterated that "there's nothing to

24  compel."  (ECF No. 82 at 10.)  When the undersigned expressed confusion as to how no

25  responsive documents could exist defense counsel argued that "the Court's speculating just as

26  ////

27

28  _____
    [2] "Brady requires the disclosure of impeachment evidence as well as exculpatory evidence."
    Parker v. Cnty. of Riverside, 78 F.4th 1109, 1112 (9th Cir. 2023) (quotation omitted).

1　much as Plaintiffs are speculating that documents exist, and that is not a basis to compel."

2　(Id. at 12.)

3　　　　On February 12, 2024, the undersigned issued an order granting plaintiff's motion to

4　compel and ordering defendants to produce responsive discovery within fourteen days.  (ECF No.

5　80.)  In relevant part, the February 12, 20224 order explained to defense counsel that if, after "a

6　reasonable inquiry" responsive documents are not found defendants "should so state with

7　sufficient specificity to allow the Court to determine" that the defendants "made a reasonable

8　inquiry and exercised due diligence."  (Id. at 3) (quotation omitted).

9　　　　On February 26, 2024—the deadline for compliance with the February 12, 2024 order—

10　defendants filed a motion for partial reconsideration of the February 12, 2024 order.  (ECF No.

11　92.)  In this regard, defendants did not seek reconsideration of the February 12, 2024 order with

12　respect to plaintiff's Requests for Production Numbers 15 and 16.[3]  (ECF No. 142 at 1-2.)  These

13　requests concern investigative and disciplinary records of named individual defendants involved

14　in the investigation and prosecution that resulted in plaintiff's conviction.  (ECF No. 71 at 13-15.)

15　　　　The day after defendants filed their motion for partial reconsideration plaintiff's counsel

16　emailed defense counsel to confirm that the defendants did "not seek reconsideration" as to

17　Requests Numbers 15 and 16.  (Soloff Decl. (ECF No. 125-10) at 2.)  Defense counsel did not

18　respond.  However, on March 4, 2024, defense counsel filed an *errata* to the motion for

19　reconsideration, stating that defendants "inadvertently omitted" plaintiff's Request Number 31

20　from the motion for reconsideration.  (ECF No. 104 at 1.)  Defendants' *errata* was silent as to

21　plaintiff's Requests Numbers 15 and 16.

22　　　　On March 15, 2024—weeks after the ordered production deadline of the February 26,

23　2024—defense counsel made a production.  (Soloff Decl. (ECF No. 125-11) at 2.)  The

24　production consisted of "over 4000 documents," despite the prior representations to the court that

25　////

26　////

27
28　　　　

---

[3] Defendants' motion for partial reconsideration was denied by the assigned District Judge on April 4, 2024.  (ECF No. 150.)

"there are no responsive documents."[4]  (ECF No. 71 at 17; see also ECF Nos. 125-1 through 125-25.)  Defendants also provided amended responses.  (ECF No. 142-1 at 5-17.)

On March 22, 2024, plaintiff filed the pending motion to find defendants in contempt. (ECF No. 123.)  On March 29, 2024, defendants filed an opposition.  (ECF No. 142.)  After reviewing the parties briefing, the undersigned ordered further briefing, noting:

> the dispute at issue appears to raise at least three concerning issues based on defense counsel's conduct: (1) the failure to timely comply with the court's February 12, 2024 order; (2) the production of over 4,000 pages of documents previously represented to the court to not exist; and (3) defense counsel's continued refusal to provide sufficient specificity when producing documents so as to allow the court and plaintiff to determine whether there was due diligence and a reasonable inquiry in searching for documents.

(ECF No. 145 at 1.)

On April 26, 2024, plaintiff filed a memorandum in support.  (ECF No. 170.)  Defendants filed a further opposition on May 3, 2024.  (ECF No. 176.)  Plaintiff filed a reply on May 10, 2024.  (ECF No. 179.)  The parties appeared before the undersigned for hearing on June 7, 2024, and the motion was taken under submission after oral argument.  (ECF No. 193.)

## ANALYSIS

"A district court has the power to adjudge in civil contempt any person who [ ] disobeys a specific and definite order of the court."  Gifford v. Heckler, 741 F.2d 263, 265 (9th Cir. 1984). "Intent is not an issue in civil contempt proceedings.  The sole question is whether a party complied with the district court's order."  Donovan v. Mazzola, 716 F.2d 1226, 1240 (9th Cir. 1983) (internal citations omitted).  "Civil contempt is characterized by the court's desire to compel obedience to a court order or to compensate the contemnor's adversary for the injuries which result from the noncompliance."  Falstaff Brewing Corp. v. Miller Brewing Co., 702 F.2d 770, 778 (9th Cir. 1983).

////

---

[4] It is not clear from defendants' briefing what search resulted in the discovery of thousands of pages of responsive documents, exactly when defense counsel became aware that these documents existed, or why defense counsel did not notify plaintiff's counsel and the court sooner of the existence and pending untimely production of these documents.

1     "'The standard for finding a party in civil contempt is well settled: The moving party has

2     the burden of showing by clear and convincing evidence that the contemnors violated a specific

3     and definite order of the court.  The burden then shifts to the contemnors to demonstrate why they

4     were unable to comply.'"  In re Bennett, 298 F.3d 1059, 1069 (9th Cir. 2002) (quoting F.T.C. v.

5     Affordable Media, 179 F.3d 1228, 1239 (9th Cir. 1999)).

6            Here, there is no dispute that defendants violated the February 12, 2024 order by failing to

7     timely produce responsive discovery with respect to Requests Numbers 15 and 16.  Defense

8     counsel's declaration states that counsel "failed to provide the amended responses on February

9     26, 2024[.]"  (Whitefleet Decl. (ECF No. 176-1) at 2.)  Defendants' argument in opposition is,

10    essentially, that "[a]lbeit late," defendants amended responses and production satisfy the February

11    12, 2024 order.  (Defs.' Opp.'n (ECF No. 176) at 2.)  Defendants argue that plaintiff's "motion

12    presupposes that the substantive amended responses violate" the February 12, 2024 order.  (Id.)

13    However, defendants' amended responses do, in fact, violate the February 12, 2024 order.

14           The February 12, 2024 order explained to defendants:

15                 Therefore, "[i]n responding to discovery requests, a reasonable
                   inquiry must be made, and if no responsive documents or tangible
16                 things exist . . . the responding party should so state with sufficient
                   specificity to allow the Court to determine whether the party made a
17                 reasonable inquiry and exercised due diligence[.]"  Atcherley v.
                   Clark, No. 1:12cv0225 LJO DLB (PC), 2014 WL 4660842, at *1
18                 (E.D. Cal. Sept. 17, 2014) (citing Fed. R. Civ. P. 26).  "If the search
                   does not reveal responsive materials, the responding party should
19                 provide sufficient information for the requesting party, and the court,
                   to be satisfied that the investigation was adequate."  AECOM Energy
20                 & Construction, Inc. v. Ripley, Case No. CV 17-5398 RSWL (SSx),
                   2018 WL 4705914, at *7 (C.D. Cal. Apr. 26, 2018); see also Uribe
21                 v. McKesson, No. 08cv1285 DMS (NLS), 2010 WL 892093, at *3
                   (E.D. Cal. Mar, 9, 2010) ("If, after a diligent search and reasonable
22                 inquiry, McKesson cannot produce the receipts, he must provide to
                   Plaintiff a declaration detailing the steps he went through to locate
23                 those receipts and explain the prison's document retention policy, if
                   applicable.").  "[B]oilerplate objections do not suffice."  Atcherley,
24                 2014 WL 4660842 at *1.

25    (ECF No. 80 at 3.)  Despite this directive, defendants' amended responses remain vague,

26    conclusory, and devoid of sufficient information to be satisfied that the defendants' search for

27    documents was adequate.

28    ////

5

In this regard, plaintiff's Request Number 15 seeks:

> All Documents and Communications concerning or related to any personnel records for Defendant Minter, Defendant Durenberger, Gregersen, Defendant Bayles, Defendant Bell, Defendant Maulsby, or Stan Reed, including any records of disciplinary actions or investigations, regardless of whether such discipline or investigation was imposed or conducted by You or any other department, agency, or organization that operates as part of Sacramento County.

(ECF No. 142-1 at 6.)  Defendants County of Sacramento and Sheriff's Office's amended response commences with vague and conclusory boilerplate objections.  (ECF No. 142-1 at 6-7.)

Thereafter defendants refer to documents produced in their untimely production and state:

> A search of the system that houses underlying internal investigations by the Sheriff's Office that, if sustained, would have led to discipline, revealed no documents for any of the defendants or Reed in the system at all.  Defendant Sheriff's Department notes however, that internal investigations documents prior to 2016 were purged following a change of law in 2020 and it did not track which documents were purged.  The County never had documents related to disciplinary matters of Minter, Durenberger, Gregersen, Bayles, Bell, Maulsby, or Reed save what might have been part of the personnel records, but have been produced.

> Defendant Sheriff's Office has no personnel or disciplinary documents related to Defendant Durenberger, and never has.  Any documents the County may have in its possession as to Marjorie Durenberger were produced in the responses from the District Attorney's office.  No documents are being withheld on the basis of the objections.

(Id. at 7-8.)  From this vague and conclusory statement, the court cannot determine whether defendants made a reasonable inquiry and exercised due diligence in searching for responsive documents.  For example, defendants assert that "The County never had documents related to disciplinary matters of Minter, Durenberger, Gregersen, Bayles, Bell, Maulsby, or Reed save what might have been part of the personnel records, but have been produced."  (ECF No. 142-1 at 7.)  How defendants arrived at this conclusion is entirely unexplained.  Defendants also state that "[a] search of the system the houses underlying internal investigations . . . that . . . would have led to discipline, revealed no documents[.]"  (ECF No. 142-1 at 7.)  What that search consisted of is also unsaid.

On May 3, 2024, defendants filed a declaration from Janae Galovich, a Lieutenant with the Sheriff's Office, dated April 3, 2024, reflecting that "a search of IARPo that houses

6

1  underlying internal investigations . . . that, if sustained, would have led to discipline" found "no

2  documents" for the Sheriff's Office.[5]  (Galovich Decl. (ECF No. 176-2) at 3.)  Plaintiff's request,

3  however, was not limited to only instances in which discipline was imposed and also sought

4  investigations as well.  (ECF No. 142-1 at 6.)  Moreover, the declaration does not speak to any

5  searches conducted by the County or the DA and reflects that the "key terms" search consisted of

6  just two words, "Brady" or "exculpatory."   (Galovich Decl. (ECF No. 176-2) at 3.)

7          Defendants' amended response also asserts that the Sheriff's Office "has no personnel or

8  disciplinary documents related to Defendant Durenberger, and never has" and that "[a]ny

9  documents the County may have in its possession as to Marjorie Durenberger were produced

10  from the District Attorney's office." (ECF No. 142-1 at 7-8.)  Again, defendants do not explain

11  the inquiry made to reach this conclusion, rendering it impossible to determine if they exercised

12  due diligence in their search.

13          Plaintiff's Request Number 16 seeks:

> All Documents and Communications concerning or related to any
> actual or potential discipline, whether formal or informal and
> including actual or potential oral counseling, that was considered
> against Defendant Durenberger, Minter, Defendant Gregersen,
> Defendant Bayles, Defendant Bell, Defendant Maulsby, or Stan
> Reed, irrespective of whether such discipline was ultimately
> imposed.

18  (Id. at 8.)  Defendants provided essentially the same vague and conclusory amended response

19  discussed above.  (Id. at 8-9.)

20          Defendants argue in opposition that "the court did not order require (sic) specific language

21  in the responses[.]" (Defs.' Opp.'n (ECF No. 176) at 2.)  This argument is misleading.  The

22  February 12, 2024 court order at issue ordered defendants to produce documents.  (ECF No. 80 at

23  4.)  As noted above, although defendants repeatedly represented that no documents existed,

24  because defendants failed to provide any specificity to support that conclusion the undersigned

25  remained unconvinced that documents did not exist.

26  ////

---

[5] Why defendants did not provide this declaration with their untimely production, in response to
plaintiff filing the motion for contempt on March 22, 2024, or with their first opposition filed on
March 29, 2024, is unclear.

7

1          That skepticism proved warranted as defendants later produced over 4,000 pages of

2  responsive documents previously represented to the court to not exist.  The February 12, 2024

3  order explained to defendants that, "'[i]n responding to discovery requests, a reasonable inquiry

4  must be made, and if no responsive documents or tangible things exist . . . the responding party

5  should so state with sufficient specificity to allow the Court to determine whether the party made

6  a reasonable inquiry and exercised due diligence[.]'"  (ECF No. 80 at 3) (quoting Atcherley v.

7  Clark, No. 1:12cv0225 LJO DLB (PC), 2014 WL 4660842, at *1 (E.D. Cal. Sept. 17, 2014).

8          The requirement that defendants provide sufficient specificity in their amended responses

9  is the law and the February 12, 2024 order explained that to defense counsel.  See generally

10  United Artists Corporation v. United Artist Studios LLC, Case No. 2:19-cv-0828 MWF MAAx,

11  2019 WL 9049050, at *5 (C.D. Cal. Oct. 7, 2019); AECOM, 2018 WL 4705914, at *7;

12  Ochotorena v. Adams, No. 1:05-cv-1524 LJO DLB (PC), 2010 WL 1035774, at *3 (E.D. Cal.

13  Mar. 19, 2010); Uribe, 2010 WL 892093, at *3; Gray v. Faulkner, 148 F.R.D. 220, 223-24 (N.D.

14  Ind. 1992).  Although applicable regardless of the circumstances, the requirement for specificity

15  is of heightened importance here given that defendants and defense counsel previously opposed

16  plaintiff's requested discovery by representing repeatedly that no documents existed—which was

17  proven untrue.

18          In summation, in response to plaintiff's requests for the production of documents

19  defendants repeatedly asserted that no documents existed.  Had those representations been

20  supported by specificity, clarity, and legal authority plaintiff's motion to compel would likely

21  have been denied.  But they were not, and the court ordered defendants to search for documents

22  and explained that, if the search revealed no responsive documents, defendants should state so

23  with sufficient specificity so that the court could be satisfied that defendants' search was

24  adequate.  (ECF No. 80.)

25          And, in fact, defendants found that responsive documents did exist.  Not just a few pages,

26  or a few hundred pages, but over 4,000 pages.  Defendants then failed to produce those

27  documents timely in violation of the February 12, 2024 order.  And defendants again provided

28  vague and conclusory amended responses containing few details as to the search defendants

conducted.  Defendants, again, ask that plaintiff and the court take their word that, this time, there truly are no more responsive documents to produce.

Defendants have failed to comply with the February 12, 2024 order of the court.  "A party who has failed to comply with an order of the court to . . .  produce documents may be found in civil contempt under subsection (D) of Rule 37(b)(2)."  In re Heritage Bond Litigation, 223 F.R.D. 527, 531 (C.D. Cal. 2004); see also Thull v. Techtronic Industries Co.,  Ltd., Case No. 3:13-mc-0102, 2014 WL 12781289, at *4 (D. Or. Feb. 3, 2014) ("The failure to produce documents or other information in response to a court order can constitute contemptuous conduct.").

It is important to note that defendants' failure to comply with the February 12, 2024 order did not occur in isolation.  In this action, defense counsel, who is part of a relatively large firm, has repeatedly displayed a lack of attention, responsiveness, and availability.  (See ECF No. 196 at 3.)  This conduct continued after an admonishment from the assigned District Judge that defense counsel ensure that if counsel "cannot meet the demands of this case by himself, other attorneys and staff will be available to assist him." (ECF No. 150 at 6.)  That does not appear to have happened.  And here defense counsel states that "the amended responses were late" due to the "press of business like attending depositions, court order mediations, preparing summary judgment motions" in other matters.  (ECF No. 176 at 2.)

Defense counsel has repeatedly refused to meet and confer with plaintiff's counsel. Defense counsel was first sanctioned $500 for this conduct.  (ECF No. 119.)  After defense counsel again refused to meet and confer with plaintiff's counsel—this time in direct violation of a court order—defense counsel was sanctioned $2,000.  (ECF No. 196.)

Moreover, in the undersigned's opinion, defendants have engaged in a blatantly transparent pattern of obstruction of discovery in this action.  It is difficult to recall another case that has come before the undersigned for the hearing of more than three discovery disputes.  Here, at the time of the drafting of this order, defendants have forced plaintiff to bring seven meritorious motions to compel for hearing.  (ECF Nos. 74, 80, 94, 119, 137, 164, 196.)

////

Defendants' opposition to those motions was not simply without merit, but it displayed a lack of sincere argument.  Defendants repeatedly asserted vague, conclusory, boilerplate, unsupported, and/or unintelligible objections and argument.  Defendants even resorted to the use of cut and paste arguments previously rejected as well as the assertion of objections that had previously been waived, ignoring prior court orders on the topic.  (Id.)

Defendants sought reconsideration of six of those orders granting plaintiff's motions to compel before the assigned District Judge.[6]  The assigned District Judge denied all six of defendants' motions for reconsideration.  (ECF Nos. 150, 168.)  Defendants' conduct has resulted in the undersigned twice issuing monetary sanctions against defendants, first in the amount of $21,000, and a second time in the amount of $27,100.[7]  (ECF Nos. 138, 186.)  The undersigned has significant concerns about the impact of defendants' obstruction on plaintiff's right to discovery, as well as with respect to what further sanctions the undersigned could impose to gain defendants'—and defense counsel's—compliance.

However, "only a district court may hold a party in contempt[.]"  On Command Video Corp. v. LodgeNet Entertainment Corp., 976 F. Supp. 917, 921 (N.D. Cal. 1997).  "28 U.S.C. § 636, which governs the jurisdiction and powers of magistrates, requires a magistrate to refer contempt charges to a district court judge."  Grimes, 951 F.2d at 240; see also 28 U.S.C. § 636 (e)(6) ("the magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified"); U.S. v. Ritte, 558 F.2d 926, 927 (9th Cir. 1977) (per curiam) ("contemptuous acts committed in the presence of a magistrate or related to proceedings before a magistrate must be referred to a district judge for adjudication").

_____

[6] The time for defendants to seek reconsideration of the seventh order has not yet run.

[7] Defendants sought reconsideration of the award of sanctions in the amount of $21,100.  (ECF No. 147.)  The assigned District Judge denied defendants' motion on April 25, 2024.  (ECF No. 168.)  Defendants have also sought reconsideration of the award of sanctions in the amount of $27,100, which remains pending.  (ECF No. 188.)

The undersigned, therefore, will certify the below facts to the assigned District Judge to determine why defendants should not be adjudged in contempt.

## CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that:

1. Defendants shall appear on **August 2, 2024,** in courtroom No. 3, at **10:00 a.m.** before the Honorable Kimberly J. Mueller to show cause why they should not be adjudged in contempt by reason of the facts so certified below.

Also, pursuant to 28 U.S.C. § 636(e)(6), the undersigned HEREBY CERTIFIES the following facts to the assigned District Judge to consider whether defendants should be adjudged in contempt:

1. In response to plaintiff's request for production of documents defendants, and defense counsel, represented to the court that no responsive documents existed.  (ECF No. 71 at 5; ECF No. 82 at 10.)

2. On February 12, 2024, the court issued an order granting plaintiff's motion to compel and ordering defendants to produce responsive discovery within fourteen days.  (ECF No. 80.)

3. With respect to plaintiff's Requests Numbers 15 and 16 defendants failed to comply with the deadline set forth in the February 12, 2024 order.  (Whitefleet Decl. (ECF No. 176-1) at 2.)

4. Despite the prior representations that no documents existed, on March 15, 2024, defendants made an untimely production of documents and further amended responses.  (Soloff Decl. (ECF No. 125-11) at 2.)

5. Defendants' amended responses are vague and conclusory in violation of the February 12, 2024 order.  (ECF No. 142-1 at 5-16.)

////

////

////

////

////

11

6.  The court has twice issued monetary sanctions against defendants for their discovery conduct and monetary sanctions have proven insufficient to gain their compliance.  (ECF Nos. 138, 186.)

Dated:  June 24, 2024

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB/orders/orders.civil/puckett0350.contempt.ord