1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  Jeremy Phillip Puckett,                    No. 2:22-cv-00350-KJM-CKD

12                 Plaintiff,                   ORDER

13        v.

14  County of Sacramento, et al.,

15                 Defendants.

16

17        Plaintiff Jeremy Puckett moves to find defendants in contempt of the magistrate judge's

18  February 12, 2024 discovery order and requests sanctions under Federal Rule of Civil Procedure

19  37.  Because a magistrate judge does not have authority to hold parties in contempt, the

20  magistrate judge certified facts for the undersigned to consider and ordered defendants to show

21  cause why they should not be adjudged in contempt.  The court held a show cause hearing on

22  August 23, 2024.  Mins. Hr'g, ECF No. 226.  Anna Veross, H. Buzz Frahn and Ziwei Xiao

23  appeared for plaintiff.  *Id.*  Plaintiff Jeremy Puckett and Karyn Sinunu-Towery of the Northern

24  California Innocence Project also were present with plaintiff's counsel.  *Id.*  John Whitefleet

25  appeared for defendants.  *Id.*  The motion is **granted in part.**

26  I.      BACKGROUND

27        Plaintiff Jeremy Puckett brought this civil rights action against several defendants who

28  allegedly played a part in his wrongful conviction.  *See generally* Compl., ECF No. 1.  The

1

parties are currently engaged in fact discovery.  *See* Order Modifying Scheduling Deadlines, ECF No. 208.  The parties have had serial, contentious discovery disputes, resulting in plaintiff's filing thirteen motions to compel, *see* ECF Nos. 42, 47, 56, 57, 63, 67, 83, 87, 97, 122, 139, 201, 206, the magistrate judge's issuing several orders granting the motions to compel and directing defendants to produce responsive discovery and documents, *see, e.g.*, ECF Nos. 74, 80, 94, 119, 137, 164, 196, and defendants' filing several motions requesting the court reconsider the magistrate judge's discovery orders, *see, e.g.*, ECF Nos. 84, 92, 109, 136, 148.  In addition, the magistrate judge has ordered defense counsel and defendants to pay sanctions for noncompliance with court orders and to pay plaintiff reasonable expenses associated with bringing the motions to compel.  *See, e.g.*, ECF Nos. 119, 138, 186, 196.  Defendants have moved for this court to reconsider some of those orders as well.  *See, e.g.*,  ECF Nos. 136, 147, 188.  The court has now considered all the motions for reconsideration.  It has denied six of the motions, ECF Nos. 150, 168, and has struck defendants' seventh motion for "failing to comply with the court's standing order and for advancing duplicative, meritless arguments," ECF No. 224.  The court has directed defendants to promptly comply with the magistrate judge's orders.  *See* ECF Nos. 150, 168, 224.

In one of his motions to compel, plaintiff included a motion to compel the production of documents in response to requests 15 and 16 to defendants Sacramento County District Attorney's Office, Sacramento County Sheriff's Office and County of Sacramento.  Mot. Compel., ECF No. 63.  Plaintiff's requests 15 and 16 are as follows, for each set of defendants:

- **Sheriff's Office Request No. 15**: All Documents and Communications concerning or related to any personnel records for Defendant Minter, Defendant Gregersen, Defendant Bayles, Defendant Bell, Defendant Maulsby, or Stan Reed, including any records of disciplinary actions or investigations, regardless of whether such discipline or investigation was imposed or conducted by You or any other department, agency, or organization that operates as part of Sacramento County.

- **Sheriff's Office Request No. 16**: All Documents and Communications concerning or related to any actual or potential discipline, whether formal or informal and including actual or potential oral counseling, that was considered against Defendant Minter, Defendant Gregersen, Defendant Bayles, Defendant

1    Bell, Defendant Maulsby, or Stan Reed, irrespective of whether
2    such discipline was ultimately imposed.

3    • **District Attorney's Office Request No. 15**: All Documents and
4      Communications concerning or related to any personnel records
5      for Defendant Durenberger, including any records of disciplinary
6      actions or investigations, regardless of whether such discipline or
7      investigation was imposed or conducted by You or any other
8      department, agency, or organization that operates as part of
9      Sacramento County.

10   • **District Attorney's Office Request No. 16**: All Documents and
11     Communications concerning or related to any actual or potential
12     discipline, whether formal or informal and including actual or
13     potential oral counseling, that was considered against Defendant
14     Durenberger, irrespective of whether such discipline was
15     ultimately imposed.

16   • **Sacramento County Request No. 15**: All Documents and
17     Communications concerning or related to any personnel records
18     for Defendant Minter, Defendant Durenberger, Gregersen,
19     Defendant Bayles, Defendant Bell, Defendant Maulsby, or Stan
20     Reed, including any records of disciplinary actions or
21     investigations, regardless of whether such discipline or
22     investigation was imposed or conducted by You or any other
23     department, agency, or organization that operates as part of
24     Sacramento County.

25   • **Sacramento County Request No. 16**: All Documents and
26     Communications concerning or related to any actual or potential
27     discipline, whether formal or informal and including actual or
28     potential oral counseling, that was considered against Defendant
29     Durenberger, Minter, Defendant Gregersen, Defendant Bayles,
30     Defendant Bell, Defendant Maulsby, or Stan Reed, irrespective
31     of whether such discipline was ultimately imposed.

32   *See* Joint Disc. Statement at 13–15,[1] ECF No. 71 (emphasis in original).

33   The Sheriff's Department and District Attorney's Office provided identical responses to

34   plaintiff's requests: "Defendant is unable to produce any documents in that the [Sheriff's

35   Department/District Attorney's Office] did not and does not maintain the personnel or

36   disciplinary files as requested, assuming such existed.  No documents are being withheld on the

---

[1] When citing page numbers on filings, the court uses the pagination automatically generated by the CM/ECF system.

1    basis of the objections." *See id.* at 14.  The County similarly provided the following response:

2    "Defendant is unable to produce any documents in that to the extent the County maintained such

3    documents as requested, such documents no longer exist.  No documents are being withheld on

4    the basis of the objections."  *Id.* at 15.

5         The magistrate judge held a hearing on this motion to compel.  Mot. Compel Hr'g Tr.,

6    ECF No. 82.  During hearing, defendants reiterated "there are no documents," *id.* 7:22, 7:24–25,[2]

7    and "[s]o there's nothing to compel," *id.* 8:2.  The magistrate judge expressed doubts regarding

8    the lack of any documents responsive to plaintiff's requests.  *Id.* 8:6–9:20.

9         After the hearing, the magistrate judge issued an order granting plaintiff's motion to

10   compel and directing defendants to produce documents in response to plaintiff's requests for

11   production, including requests for production 15 and 16, within fourteen days.  *See* Compel

12   Order, ECF No. 80.  In that order, the magistrate judge noted "[d]efendants have now twice come

13   before the undersigned with unmeritorious opposition to discovery."  *Id.* at 4.  The magistrate

14   judge also alerted defendants to the correct legal standards applicable when a party claims not to

15   have responsive discovery.  *See id* at 3.

16        Rather than complying with the magistrate judge's order, defendants moved for a partial

17   reconsideration of the discovery order, *see* Mot. Recons., ECF No. 92, which this court denied,

18   Prior Order (Apr. 4, 2024), ECF No. 150.  Defendants did not move for reconsideration regarding

19   the part of the order granting the motion to compel responses to requests 15 and 16.  *See* Mot.

20   Recons.  Defendants' deadline to produce responsive documents in compliance with the

21   magistrate judge's order was February 26, 2024.  *See* Compel Order.  Defendants did not submit

22   amended responses to requests 15 and 16 until March 15, 2024, almost three weeks after the

23   court-imposed deadline, and only after plaintiff's counsel notified defendants' counsel of

24   plaintiff's intent to file a motion for contempt.  *See* Soloff Decl. in Support of Mot. Contempt

25   ¶¶ 39–41, ECF No. 125.  Moreover, despite previously contending there were no responsive

26   documents to produce, defendants in fact produced several documents.  *See id.* ¶ 41.

---

[2] For the hearing transcript, the court cites to the page number on the reporter's transcript and not to the page numbers automatically generated by the CM/ECF system.

Defendants' amended responses to requests 15 and 16, for each set of defendants, are as follows:

**District Attorney's Office:**

Amended Response to Request for Production 15:

> Defendant has never kept, collected, or had in its possession responsive documents as to Detectives Minter, Gregersen, Bayles, Bell, Maulsby, or Reed.  Produced herewith are documents DURENBERGER0001-0243.   There are no known actual or potential disciplinary actions of Ms. Durenberger, nor any known investigations thereof, and thus no documents to produce.   No documents are being withheld on the basis of the objections.

Amended Response to Request for Production 16:

> Defendant has never kept, collected, or had in its possession responsive documents as to Detectives Minter, Gregersen, Bayles, Bell, Maulsby, or Reed.  There are no known actual or potential disciplinary actions of Ms. Durenberger, nor any known investigations thereof, and thus no documents to produce.   No documents are being withheld on the basis of the objections.

Dist. Att'y's Off. Further Am. Resp. at 4–5, Soloff Decl. Ex. 12, ECF No. 125-12.

**County of Sacramento and Sacramento County Sheriff's Office:**

Amended Response to Request for Production 15:

> Following further inquiry, see privilege log and documents produced herewith as BAYLES0001-0792; BELL0001-0643; GREGERSON0001-0646; MAULSBY0001-0784; AND MINTER0001-0864.   Defendant has no documents related to Defendant Durenberger.  No documents are being withheld on the basis of the objections.

Amended Response to Request for Production 16:

> Following further inquiry, see privilege log.   Beyond what is identified in the privilege log, there were no other known actual or potential discipline.   Defendant has no documents related to Defendant Durenberger.  No documents are being withheld on the basis of the objections.

County & Sheriff's Off. Further Am. Resp. at 4–5, Soloff Decl. Ex. 13, ECF No. 125-13.

1        After reviewing the amended responses and document production, plaintiff's counsel

2   informed defendants of the following deficiencies: 1) defendants' production was late and

3   2) defendants "continue to refuse to provide a statement signed under oath specifically stating

4   whether any searches were done for documents they allege do not exist, and if so, where Entity

5   Defendants searched."  Soloff Decl. in Support of Mot. Contempt ¶ 42.  Plaintiff's counsel

6   informed defendants' counsel of plaintiff's intention to file a motion to hold defendants in

7   contempt if defendants did not cure the deficiencies plaintiff identified.  *Id.*  On March 18,

8   defendants produced additional documents, but no declarations regarding the scope of any

9   searches.  *Id.* ¶ 43; Whitefleet Decl. in Support of Defs.' Opp'n to Pl.'s Opening Br. ¶ 8, ECF No.

10  176-1.

11       Plaintiff then moved the court to hold defendants in contempt of the magistrate judge's

12  discovery order.  Mot. Contempt, ECF No. 123; Mem., ECF No. 124.  Defendants opposed,

13  Opp'n Mot. Contempt, ECF No. 142.  After reviewing the parties' briefs, the magistrate judge

14  noted the following three issues: 1) defendants' failure to timely comply with the court's order;

15  2) defendants' production of documents counsel previously represented did not exist; and

16  3) "defense counsel's continued refusal to provide sufficient specificity when producing or not

17  producing documents so as to allow the court and plaintiff to determine whether there was due

18  diligence and a reasonable inquiry in searching for documents."  Prior MJ Order at 1 (Apr. 3,

19  2024), ECF No. 145.  The magistrate judge set a date for hearing plaintiff's motion and directed

20  the parties to file additional briefs.  *Id.* at 6.  Plaintiff filed an opening brief, Pl.'s Opening Br.,

21  ECF No. 170, and defendants filed an opposition, Defs.' Opp'n to Pl.'s Opening Br., ECF No.

22  176.  Defendants then, for the first time, attached a declaration of a Lieutenant employed by the

23  Sheriff's Department, who explained the search she conducted for responsive documents.

24  Galovich Decl., ECF No. 176-2.  The magistrate judge held a hearing on plaintiff's contempt

25  motion, Contempt Hr'g Tr., ECF No. 195, and issued the order directing defendants to appear

26  before the undersigned to show cause why they should not be adjudged in contempt of the

27  magistrate judge's discovery order, MJ OSC, ECF No. 198.

In the order to issuing the order show cause, the magistrate judge certified the following

facts for the court to consider in accordance with 28 U.S.C. § 636(e)(6):

> 1. In response to plaintiff's request for production of documents defendants, and defense counsel, represented to the court that no responsive documents existed. (ECF No. 71 at 5; ECF No. 82 at 10.)

> 2. On February 12, 2024, the court issued an order granting plaintiff's motion to compel and ordering defendants to produce responsive discovery within fourteen days. (ECF No. 80.)

> 3. With respect to plaintiff's Requests Numbers 15 and 16 defendants failed to comply with the deadline set forth in the February 12, 2024 order. (Whitefleet Decl. (ECF No. 176-1) at 2.)

> 4. Despite the prior representations that no documents existed, on March 15, 2024, defendants made an untimely production of documents and further amended responses. (Soloff Decl. (ECF No. 125-11) at 2.)

> 5. Defendants' amended responses are vague and conclusory in violation of the February 12, 2024 order. (ECF No. 142-1 at 5-16.)

> 6. The court has twice issued monetary sanctions against defendants for their discovery conduct and monetary sanctions have proven insufficient to gain their compliance. (ECF Nos. 138, 186.)

*Id.* at 11–12.

This court set the matter for a hearing and permitted defendants to file a written response

to the order to show cause.  Min. Order (July 18, 2024), ECF No. 209.  Plaintiff has filed a

supplemental brief in support of his motion.  Pl.'s Supp. Br., ECF No. 215.[3]  Defendants have

filed a response, Defs.' OSC Resp., ECF No. 218, and for the first time, the response includes

four additional declarations explaining the steps defendants have taken to search for responsive

documents, *see* Vasquez Decl., ECF No. 218-3; Cavillo Decl., ECF No. 218-4; Daily Decl., ECF

No. 218-5; Blazina Decl., ECF No. 218-6.  Plaintiff has filed a reply, Pl.'s Reply OSC, ECF No.

222.

---

[3] At hearing, defendants moved to strike plaintiff's supplemental brief because the court did not grant leave to file supplemental briefs.  Because the court does not consider the brief in resolving this motion, the motion to strike is **denied as moot.**

1    **II.    CIVIL CONTEMPT**

2        **A.    Legal Standard**

3        Under 28 U.S.C. § 636(d), "contemptuous acts committed in the presence of a magistrate

4    or related to proceedings before a magistrate must be referred to a district judge for adjudication."

5    *United States v. Ritte*, 558 F.2d 926, 927 (9th Cir. 1977) (per curiam).  "If a magistrate judge

6    certifies such facts and issues an order to show cause, '[t]he district judge shall thereupon hear the

7    evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish

8    such person in the same manner and to the same extent as for a contempt committed before a

9    district judge." *Yan Sui v. Marshack*, No. 15-00059, 2015 WL 13546439, at *2 (C.D. Cal. July 2,

10   2015), *aff'd*, 691 F. App'x 374 (9th Cir. 2017) (quoting 28 U.S.C. § 636(e)(6)(B)(iii)).  "[I]f there

11   is nothing else appearing before the district court and the certified facts, if true, will support a

12   violation, then the district court may, if it deems the burden of persuasion to have been satisfied,

13   find a party in contempt."  *Id.* at *3 (quoting *Proctor v. State Gov't of N.C.*, 830 F.2d 514, 521

14   (4th Cir. 1987)).

15       "[C]ourts have inherent power to enforce compliance with their lawful orders through

16   civil contempt." *Spallone v. United States*, 493 U.S. 265, 276 (1990) (quoting *Shillitani v. United

17   States*, 384 U.S. 364, 370 (1966)).  "The standard for finding a party in civil contempt is well

18   settled: The moving party has the burden of showing by clear and convincing evidence that the

19   contemnors violated a specific and definite order of the court." *F.T.C. v. Affordable Media*, 179

20   F.3d 1228, 1239 (9th Cir. 1999) (quoting *Stone v. City of San Francisco*, 968 F.2d 850, 856 n.9

21   (9th Cir. 1992)).  Once the moving party meets its burden, "[t]he burden then shifts to the

22   contemnors to demonstrate why they were unable to comply." *Id.*

23       **B.    Analysis**

24       Defendants first argue plaintiff's notice fails to comply with due process because it did not

25   properly apprise defendants of the basis for sanctions.  Defs.' OSC Resp. at 4.  However,

26   plaintiff's notice specifically notified defendants that his motion to hold defendants in contempt is

27   based on defendants' failure to comply with the magistrate judge's order.  *See* Mot. Contempt.

28   Moreover, as defendants themselves acknowledge, "due process requires that courts provide

8

1   notice and opportunity to be heard before imposing *any* kind of sanctions."  Defs.' OSC Resp. at

2   4 (emphasis in original) (alteration omitted) (quoting *Lee v. Gates*, No. 03-03126, 2005 WL

3   67087, at *2 (C.D. Cal. Jan. 10, 2005)).  Here, the court provided defendants with sufficient

4   notice and an opportunity to be heard.  *See* Prior MJ Order (Apr. 3, 2024); Contempt Hr'g Tr.; MJ

5   OSC; Min. Order (July 18, 2024); Mins. Hr'g.  Defendants' due process argument is without

6   merit.  Defendants conceded at hearing that if the court was going to issue sanctions limited to the

7   magistrate judge's discovery order at issue here, then there is no due process violation.

8          The court thus considers whether plaintiff has met his burden of showing defendants

9   violated a specific and definite order of the court by clear and convincing evidence, and

10  concludes plaintiff has.  The magistrate judge's order directed defendants to produce responsive

11  discovery within fourteen days of the order.  Compel Order at 4.  Defendants concede they did

12  not timely produce their documents and amended response.  *See* Whitefleet Decl. in Support of

13  OSC Resp. ¶ 4, ECF No. 218-1; Contempt Hr'g Tr. at 20:5–6.

14         The magistrate judge also explained the relevant legal standards applicable when a party

15  claims not to have responsive discovery.  Compel Order at 3.  She specifically noted if a party

16  claims no responsive documents exist, "the responding party should so state with sufficient

17  specificity to allow the Court to determine whether the party made a reasonable inquiry and

18  exercised due diligence."  *Id.* at 3 (citing *Atcherley v. Clark*, No. 12-0225, 2014 WL 4660842, at

19  *1 (E.D. Cal. Sept. 17, 2014)).  The magistrate reiterated that "[i]f the search does not reveal

20  responsive materials, the responding party should provide sufficient information for the

21  requesting party, and the court, to be satisfied that the investigation was adequate."  *Id.* (quoting

22  *AECOM Energy & Constr., Inc. v. Ripley*, Case No. 17-5398, 2018 WL 4705914, at *7 (C.D. Cal.

23  Apr. 26, 2018)).  She explained "[s]imply stating a document is not being produced because it

24  'was not maintained' does not provide sufficient information" because an entity may possess a

25  document even if there is no policy or procedure to maintain documents, or an entity may have a

26  policy to maintain documents but failed to do so, or the entity may not have sufficiently searched

27  for the responsive documents.  *Id.* at 2–3.  The magistrate judge emphasized "boilerplate

28  objections do not suffice."  *Id.* at 3 (quoting *Atcherley*, 2014 WL 4660842, at *1).

9

1      Despite the magistrate judge's specific order, defendants produced similar vague and

2   boilerplate objections in their amended responses to plaintiff's requests 15 and 16, which the

3   magistrate judge had previously rejected.  *Compare* Joint Disc. Statement at 14–15, *with* Dist.

4   Att'y's Off. Further Am. Resp. at 4–5 *and* County & Sheriff's Off. Further Am. Resp. at 4–5.

5   The amended responses simply state defendants do not have responsive documents apart from the

6   documents defendants belatedly produced.  *See* Dist. Att'y's Off. Further Am. Resp. at 4–5;

7   County & Sheriff's Off. Further Am. Resp. at 4–5.  While defendants have now, belatedly,

8   submitted declarations describing searches they conducted, in their amended responses,

9   defendants do not explain when they conducted any search for those documents, how they

10  conducted the search, who conducted the search or where they searched.  The amended responses

11  lack sufficient information necessary for plaintiff and the court to conclude defendants exercised

12  due diligence in searching for the responsive documents.  Defendants plainly did not comply with

13  the magistrate judge's discovery order, and their actions demonstrate a complete disregard of the

14  magistrate judge's order.

15     After plaintiff moved for contempt, and after the magistrate judge identified the problems

16  with defendants' responses, defendants belatedly attached a declaration of Lieutenant Janae

17  Galovich in support of their opposition to plaintiff's opening brief.  *See* Galovich Decl. (signed

18  April 3, 2024).  Lieutenant Galovich declares she searched records using electronic software,

19  "which houses underlying internal investigations by the Sheriff's Office that, if sustained, would

20  have led to discipline," and found no responsive documents.  *Id.* ¶¶ 7–8.  She also conducted

21  word searches for "Brady" and "exculpatory" and found no documents.  *Id.* ¶ 9.  As the

22  magistrate judge notes, it is unclear "[w]hy defendants did not provide this declaration with their

23  untimely production, in response to plaintiff filing the motion for contempt on March 22, 2024, or

24  with their first opposition filed on March 29, 2024[.]"  MJ OSC at 7 n.5.  Moreover, the

25  declaration is limited to searches the Sheriff's Office conducted and does not include searches the

26  County or District Attorney's Office did or did not do.  *See* Galovich Decl. ¶¶ 2–3 (declarant is

27  employed by Sheriff's Department and is "responsible for managing all administrative

28  investigations within the Sheriff's Office"); *see also* MJ OSC at 7.  The search Lieutenant

1   Galovich describes did not include investigations that did not lead to discipline, *see* Galovich

2   Decl. ¶ 8; MJ OSC at 7, and the key search terms she used consisted of only two words, *see*

3   Galovich Decl. ¶ 9; MJ OSC at 7.

4         After the magistrate judge issued the order to show cause on June 24, 2024, defendants

5   submitted additional declarations.  *See* Wein Decl. in Support of Pl.'s Reply ¶ 13, ECF No. 223;

6   *see also* Vasquez Decl. (explaining steps declarant took to search for responsive documents

7   related to the Sheriff's Department); Cavillo Decl. (explaining search conducted for responsive

8   documents related to the County); Daily Decl. (search as to County); Blazina Decl. (explaining

9   search conducted for responsive documents related to the District Attorney's Office).

10        These belated declarations defendants submitted after plaintiff moved for contempt have

11  no bearing on whether defendants complied with the magistrate judge's order.  Defendants

12  contend they are "at a loss to understand how [their] explanation of searches performed is not

13  responsive to both the requests and the court's order."  Defs.' OSC Resp. at 2.  However,

14  defendants did not attach the declarations they now submit with their amended responses.  Nor

15  did the amended responses provide the steps defendants took to search for the documents to allow

16  the court and plaintiff to determine whether defendants exercised due diligence.  *See Atcherley*

17  2014 WL 4660842, at *1.

18        At hearing, defense counsel repeatedly represented the searches defendants conducted

19  were related to disciplinary actions involving potential *Brady* violations, making the incorrect

20  assumption that this would have been sufficient.  Defense counsel also appeared to misunderstand

21  or reduce the scope of plaintiff's discovery request by representing defendants searched only for

22  the existence of an affirmative investigations—i.e., documents that show there was an

23  investigation.  However, plaintiff's requests for production 15 and 16 are much broader in scope:

24  he seeks all documents and communications concerning or relating to "any actual or potential

25  discipline, whether formal or informal," and personnel records including any records of

26  disciplinary actions or investigations, "regardless of whether such discipline or investigation was

27  imposed or conducted[.]"  *See* Joint Disc. Statement at 13–15.  On their face, the discovery

28  requests do not limit their scope to *Brady* violations or investigations that actually occurred.

1    Defendants do not argue the magistrate judge limited the scope of these two requests for

2    production in her order granting the plaintiffs' motion to compel.  Thus, even if the court were to

3    find defendants exhausted searches for potential *Brady* violations or affirmative investigations,

4    based on counsel's representation defendants have not complied with the magistrate judge's

5    entire order, which required defendants to produce all responsive documents.  *See* Compel Order.

6    With the exception of the Vasquez declaration, which suggests a broader search was conducted

7    by the Sheriff's Department, *see* Vasquez Decl., the belated declarations defendants provide do

8    not suggest otherwise, *see* Galovich Decl. ¶¶ 7–8 (searched internal investigations and *Brady*

9    violations); Calvillo Decl. ¶ 4 (reflecting understanding plaintiff requested disciplinary files

10   related to *Brady* violations); Daily Decl. ¶ 3 (conducted searches related to *Brady* violations);

11   Blazina Decl. ¶¶ 6–7 (search conducted for *Brady* violations).  Accordingly, plaintiff has met his

12   burden of showing defendants violated the magistrate judge's order.

13          The burden thus shifts to defendants to demonstrate why they were not able to comply

14   with the order.  Defendants have not met their burden.  In their response to the order to show

15   cause, defendants do not address why they were unable to comply.  Rather, they rely simply on

16   their position plaintiff has not met his burden of showing they violated the court's order, Defs.'

17   OSC Resp. at 7, and maintain defendants were not required to submit a declaration regarding the

18   searches defendants conducted, *id.* at 4.  Additionally, as plaintiff notes, defendant's response to

19   the OSC does not provide the court with any new information or arguments, but rather,

20   "regurgitate[s], nearly word-for-word, their previous briefing."  *See* Pl.'s Reply OSC at 2;

21   *compare* Defs.' Opp'n to Pl.'s Opening Br., *with* Defs.' OSC Resp.

22          Defense counsel has submitted a declaration explaining he is responsible for inadvertently

23   failing to meet the court-imposed deadline.  *See* Whitefleet Decl. in Support of OSC Resp. ¶¶ 4–

24   9.  At hearing, counsel confirmed his acknowledgement that it was his fault defendants'

25   submission of the amended responses and production of some of the documents were late.

26   Although counsel may have been responsible for the belated submissions, defendants are

27   responsible for the noncompliance with the magistrate judge's discovery order.  Defendants have

28   played an active role in discovery, as evidenced by their declarations.  *See also* Pl.'s Reply OSC

1    at 5 (noting "responsibility does not lie with Defendants' counsel alone: these discovery

2    responses in violation of the Court's Order to Produce come after this Court has sanctioned Entity

3    Defendants as parties and ordered them to pay $48,200, and individuals from the County,

4    Sheriff's Office, and District Attorney's Office wrote the insufficient declarations served on

5    Plaintiff" (citation omitted)).  Defendants belatedly produced documents they had claimed did not

6    exist, for more than a year, and did not explain the steps they took at any point to search for

7    responsive documents either  in their responses or amended responses to plaintiff's requests for

8    production.  Counsel's delay in submitting the amended responses and some of the documents

9    does not excuse defendants' noncompliance with a court order.

10          Fundamentally, defendants have now shown they are able to comply, as they belatedly

11    have explained the steps they took at some point to search for responsive documents.  And they

12    have actually produced some documents after a year during which they said they had none.

13    Having carefully considered the parties' briefs and arguments during hearing, the court finds

14    defendants are in contempt of the magistrate judge's discovery order.

## III.    SANCTIONS

### A.    Legal Standard

17          The court considers whether sanctions are appropriate.  *See Int'l Union, United Mine*

18    *Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994) ("[C]ivil contempt sanctions, or those

19    penalties designed to compel future compliance with a court order, are considered to be coercive

20    and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon

21    notice and an opportunity to be heard.").  "Judicial sanctions in civil contempt proceedings may,

22    in a proper case, be employed for either or both of two purposes; to coerce the defendant into

23    compliance with the court's order, and to compensate the complainant for losses sustained."

24    *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947).  "The measure of the

25    court's power in civil contempt proceedings is determined by the requirements of full remedial

26    relief."  *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193 (1949).

27    /////

28    /////

13

Additionally, under Federal Rule of Civil Procedure 37(b), if a party fails to comply with a court order, the court may issue "just orders" including orders:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).

"Rule 37(b)(2) contains two standards—one general and one specific—that limit a district court's discretion." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982). "First, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Id.* Sanctions under Rule 37(b) serve three general purposes: 1) to "ensure that a party will not be able to profit from its own failure to comply," 2) to serve as a deterrent and "to secure compliance with the particular order at hand," and 3) "to consider the general deterrent effect [the court's] order[] may have on the instant case and on other litigation, provided that the party on whom they are imposed is, in some sense, at fault." *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1369 (9th Cir. 1980) (quoting *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979)). "A district court's use of sanctions in order to achieve these objectives is tempered by the requirements of due process." *Id.* Therefore, the harshest sanction—dismissal—is improper "when it has been established that failure to comply

1   (with court discovery orders) has been due to inability, and not to willfulness, bad faith, or any

2   fault of (the disobedient party)[.]" *Id.*

3          Finally, federal courts also have "inherent power" to "levy sanctions in response to

4   abusive litigation practices," *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765 (1980), and "to

5   manage their own affairs so as to achieve the orderly and expeditious disposition of cases,"

6   *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (citation omitted).  This includes the "power to

7   punish for contempt[.]" *Id.* at 44.

8          **B.        Analysis**

9          Plaintiff argues the threat of, and actual orders to pay, monetary sanctions have not

10  effectively compelled defendants to comply with the magistrate judge's discovery order.  Mem. at

11  15; Pl.'s Opening Br. at 6.  Therefore, he argues merit-based, evidentiary sanctions are warranted.

12  Mem. at 17.  Specifically, plaintiff requests the court establish a list of enumerated facts as true

13  under Rule 37(b)(2)(A)(i).  *Id.* at 19–22 (listing facts plaintiff seeks to establish).  He explains

14  these alleged facts relate to whether defendants have a policy of refusing to discipline or

15  otherwise hold detectives, law enforcement officers, and prosecutors responsible for violation of

16  citizens' rights.  *Id.* at 22.  He further explains these facts are directly related to the responsive

17  documents plaintiff expected to receive from defendants, had they complied with the magistrate

18  judge's order.  *Id.*  Plaintiff also requests the court prohibit defendants from opposing his first

19  claim, alleging a violation of the Due Process Clause of the Fourteenth Amendment, and third and

20  fourth claims, municipal liability under *Monell*, *id.* at 23, and from "using any 'information,

21  witnesses, or evidence on a motion or at trial within the scope' of Requests 15 and 16" under Rule

22  37(b)(2)(A)(ii), *id.* at 23–24.  In the alternative, plaintiff requests the court issue other relief as the

23  court decides what is "just and appropriate.  *Id.* at 24.

24         Defendants argue exclusionary sanctions are particularly harsh and are not warranted in

25  this case.  Defs.' OSC Resp. at 6.  Defendants also argue plaintiff has not been prejudiced by the

26  late production because defendants ultimately produced some documents.  *Id.* at 7.

1    **C.    Rule 37(b)(2)(A)(i)**

2         A district court may issue "orders taking the plaintiff's allegations as established and

3    awarding judgment to the plaintiff on that basis," only in "extreme circumstances" where the

4    violations were a result of "willfulness, bad faith, or fault of the party." *U.S. for Use & Ben. of*

5    *Wiltec Guam, Inc. v. Kahaluu Const. Co.*, 857 F.2d 600, 603 (9th Cir. 1988) (citation omitted).

6    The court applies this standard when deciding whether to grant dismissal, default judgment or

7    "preclusion of evidence that is tantamount to dismissal" or default. *See Sumitomo Marine & Fire*

8    *Ins. Co.*, 617 F.2d at 1369.  In considering whether to impose such harsh sanctions, the court must

9    consider the following factors: "(1) the public's interest in expeditious resolution of litigation;

10   (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public

11   policy favoring the disposition of cases on their merits; and (5) the availability of less drastic

12   sanctions." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990) (citation

13   omitted).

14        Here, plaintiff requests the court establish certain facts related to his *Monell* liability

15   claims in particular.  Mem. at 19–22.  As a preliminary matter, not all the facts plaintiff seeks to

16   establish are reasonably related to the subject of his discovery requests. *See Navellier v. Sletten*,

17   262 F.3d 923, 947 (9th Cir. 2001) ("Sanctions may be warranted under Federal Rule of Civil

18   Procedure 37(b)(2) for failure to obey a discovery order as long as the established issue bears a

19   reasonable relationship to the subject of discovery that was frustrated by sanctionable conduct.").

20   As noted above, plaintiff sought discovery of documents and communications related to

21   personnel records of named defendants and records of any disciplinary actions or investigations.

22   *See* Joint Disc. Statement at 13–15.  Accordingly, any requests to find certain facts established

23   that are outside of the scope of the requests, such as allegations that defendants "developed,

24   created, and maintained" a "culture of impunity," caused plaintiff's injuries, or acted "deliberately

25   or recklessly," are not sufficiently related to the scope of requests 15 and 16. *See* Mem. at 19–22.

26   However, this order does not preclude plaintiff from filing motions in limine related to these

27   requests or to propose jury instructions at trial, allowing the jury to reach adverse inferences from

28   the lack of production of documents, including complete disciplinary records.

16

1         Although plaintiff's request for sanctions under Rule 37(b)(2)(A)(i) goes beyond the

2    scope of his discovery requests, allegations that defendants did not discipline, record or otherwise

3    investigate violations are specifically related to requests 15 and 16.  Deeming these facts

4    established for the purpose of this action is just, taking into account the range of defendants'

5    actions in this case, as explained below.

6         The court has considered all of defendants' discovery conduct in determining appropriate

7    sanctions.  *See Adriana Int'l Corp.*, 913 F.2d at 1411–12 ("In evaluating the propriety of

8    sanctions, we look at all incidents of a party's misconduct.").  At hearing, defendants argued the

9    court could not consider defendants' prior conduct.  However, "[t]his circuit's law is to the

10   contrary."  *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 947 (9th Cir. 1993).  The court may consider

11   defendants' prior discovery conduct to determine the propriety of sanctions.  *Id.*; *see also Payne*

12   *v. Exxon Corp.*, 121 F.3d 503, 508 (9th Cir. 1997) ("The district court may properly consider all

13   of a party's discovery misconduct in weighing a motion to dismiss, including conduct which has

14   been the subject of earlier sanctions.").  This case was filed over two years ago, and fact

15   discovery should have been completed by November 17, 2023.  Mins., Mot. Hr'g (Nov. 4, 2022),

16   ECF No. 32.  However, discovery has not been completed because defendants have engaged in a

17   pattern of obstructing the discovery process.  *See, e.g.*, MJ OSC at 9 (expressing opinion that

18   "defendants have engaged in a blatantly transparent pattern of obstruction of discovery in this

19   action").  For example, throughout the pendency of this case, defendants have not in good faith

20   met and conferred with plaintiff.  *See, e.g.*, *id.* at 9 (noting [d]efense counsel has repeatedly

21   refused to meet and confer with plaintiff's counsel").  Although the discovery process "should be

22   cooperative and largely unsupervised by the district court," *Sali v. Corona Reg'l Med. Ctr.*, 884

23   F.3d 1218, 1219 (9th Cir. 2018), defendants' lack of cooperation has forced plaintiff to seek

24   judicial intervention numerous times.  As noted, the magistrate judge granted several of plaintiff's

25   motions to compel and has also sanctioned defendants for noncompliance with the court's orders.

26   Rather than complying with the magistrate judge's order, defendants have unsuccessfully moved

27   to reconsider the magistrate judge's orders seven times.

Moreover, defendants have misled the court and plaintiff, in material respects.  For over a year, defendants claimed not to have the documents they did belatedly produce and repeatedly represented to the magistrate judge they did not have the documents.  *See* Prior MJ Order (Apr. 3, 2024); Soloff Decl. in Support of Mot. Contempt Exs. 4–6, ECF Nos. 125-4, 125-5, 125-6 (responses to requests filed January 17, 2023).  Despite multiple orders cautioning defendants against unmeritorious opposition to discovery and boilerplate objections, defendants continued to make similar objections and arguments.  *See, e.g.*, Compel Order at 3; *compare* Joint Disc. Statement at 13–15 (discovery responses MJ determined were unmeritorious and insufficient), *with* Dist. Att'y's Off. Further Am. Resp. at 4–5, *and* County & Sheriff's Off. Further Am. Resp. at 4–5 (discovery responses after MJ order to compel).  It was not until after plaintiff moved for contempt, and after the magistrate judge noted the problems with defendants' responses, that defendants belatedly submitted a declaration in support of their contention that the Sheriff's Office had no responsive documents.  Then, defendants belatedly submitted additional declarations only after the magistrate judge issued the order to show cause and without any explanation for why defendants could not obtain those declarations earlier.  Because the declarations do not make clear when defendants conducted the searches, the court could reasonably infer defendants had not in fact conducted the search for responsive documents until after they submitted the amended responses to plaintiff.  *Cf. Fid. Nat. Fin. Inc. v. Hyman*, 396 F. App'x 472, 473 (9th Cir. 2010) (unpublished) ("The district court's application of Rule 37 was not an abuse of discretion, as it was logical, plausible, and supported by inferences that it properly drew from the record." (citing *United States v. Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir.2009)); *Ortiz v. Kelly*, 404 F. App'x 140, 141 (9th Cir. 2010) (unpublished) ("[T]he district court did not abuse its discretion by refusing to draw a negative inference and impose sanctions for alleged spoliation of evidence.").

During hearing, when pressed by the court, defense counsel could not explain when defendants searched for and produced some of the responsive documents.  Although one declarant initiated one search process in November 2023 by asking "the Human Resources personnel assigned to the Sheriff's Department to search and produce all [requested] records,"

18

1    Vasquez Decl. ¶ 6, the declaration does not specify when the search and production actually took

2    place.  None of the declarations specifies when defendants searched for responsive documents.

3    From this record, it appears defendants did not search for and produce responsive documents until

4    after plaintiff moved to hold defendants in contempt.  Defendants have not shown their inability

5    to comply with the magistrate judge's order was due to an inability to comply—rather, on this

6    record, it appears at least willful if not in bad faith.

7          Defendants' argument that their belated submission of declarations show they have now

8    complied with the magistrate judge's order, conducted appropriate searches for the responsive

9    documents and have not found any responsive documents is too little too late.  As noted, it is

10   unclear when some of the searches were conducted.  *See, e.g.*, Galovich Decl. (signed after

11   plaintiff moved for contempt and not specifying timeframe of search on behalf of Sheriff's

12   Department); Cavillo Decl. (signed after magistrate judge ordered defendants to show cause and

13   not specifying timeframe of search for County); Blazina Decl. (signed after OSC and not

14   specifying timeframe of search for District Attorney's Office.  Defendants may have conducted

15   the appropriate searches for *Brady*-related documents after they submitted the amended responses

16   to requests 15 and 16 and after plaintiff moved for contempt, which would provide an explanation

17   for the defendants' belated submission of the declarations.  Even if the court were to find the

18   belated declarations are now sufficient to show defendants diligently searched for some of the

19   responsive documents and no such documents exist, *see, e.g., Boyd v. Etchebehere*, No. 13-

20   01966, 2016 WL 829167, at *4 (E.D. Cal. Mar. 3, 2016), the court cannot reward defendants'

21   willful discovery conduct, even if the conduct is not clearly in bad faith.  "[T]he public interest

22   requires not only that Court orders be obeyed but further that Governmental agencies which are

23   charged with the enforcement of laws should set the example of compliance with Court orders."

24   *Sumitomo Marine & Fire Ins. Co.*, 617 F.2d at 1370 (citation omitted).  If sanctions were not

25   awarded in these kinds of cases, "other parties to other lawsuits would feel freer than we think

26   Rule 37 contemplates they should feel to flout other discovery orders of other district courts."

27   *See id.* (citation omitted).  Moreover, "[b]elated compliance with discovery orders does not

28   preclude the imposition of sanctions."  *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th

1  Cir. 2002) (quoting *N. Am. Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1451 (9th

2  Cir. 1986)).

3          Accordingly, the court finds evidentiary sanctions limited to establishing facts related to

4  requests 15 and 16 is appropriate in this case.  Although the sanction is not tantamount to default

5  on the *Monell* liability claims, as the facts relate only to whether defendants had a policy and not

6  to the other elements of *Monell*, the court nevertheless considers the factors courts must weigh

7  when imposing such harsh sanctions.

8          First, the public interest in expeditious resolution of litigation, which has been delayed in

9  part by defendants' actions, weighs in favor of a sanction.  Further proceedings, including an

10  evidentiary hearing to determine whether or not these documents in fact exist, whether defendants

11  have in fact diligently searched for responsive documents or whether defendants have again

12  misled the court will only further delay the action, after a delay approaching a year.  Second, the

13  court's need to manage its docket also weighs in favor of the sanction.  Defendants have already

14  prompted the expenditure of limited court resources by obstructing discovery and unduly

15  cluttered the court's docket.  Third, plaintiff has been prejudiced by defendants' conduct.  Delay

16  alone, while a factor, may be insufficient to show prejudice.  *See Adriana Int'l Corp.*, 913 F.2d at

17  1412 ("Delay alone has been held to be insufficient prejudice."); *In re Phenylpropanolamine*

18  *(PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006) ("The law . . . presumes prejudice

19  from unreasonable delay.").  "Failure to produce documents as ordered, however, is considered

20  sufficient prejudice." *Adriana Int'l Corp.*, 913 F.2d at 1412.  As noted, defendants have failed to

21  produce all responsive documents as ordered, and defendants' conduct in discovery has

22  "threaten[ed] to interfere with the rightful decision of the case." *See Anheuser-Busch, Inc. v. Nat.*

23  *Beverage Distribs.*, 69 F.3d 337, 354 (9th Cir. 1995).  Defendants' belated production and

24  submission of additional declarations do not cure this prejudice to plaintiff. *See Combs*, 285 F.3d

25  at 906 ("Last-minute tender of documents does not cure the prejudice to opponents nor does it

26  restore to other litigants on a crowded docket the opportunity to use the courts.").  Fourth, the

27  public policy favoring the disposition of cases on their merits is neutral. *Accord White v.*

28  *Gonzales*, No. 21-04221, 2024 WL 1659896, at *5 (N.D. Cal. Apr. 16, 2024) (considering fourth

20

1    factor neutral when opposing party "caused significant delay and prevented th[e] case from

2    progressing towards resolution on the merits").  The court's sanction is not case-dispositive.

3    Finally, the court finds less drastic sanctions will not be effective given the protracted history of

4    the discovery litigation in this case.  The magistrate judge noted "significant concerns about the

5    impact of defendants' obstruction on plaintiff's right to discovery, as well as with respect to what

6    further sanctions the undersigned could impose to gain defendants'—and defense counsel's—

7    compliance."  MJ OSC at 10.  The magistrate judge warned defendants repeatedly of their

8    improper discovery conduct and issued monetary sanctions.  *See United States v. Hempfling*, No.

9    05-0594, 2008 WL 703809, at *9 (E.D. Cal. Mar. 13, 2008), *aff'd*, 385 F. App'x 766 (9th Cir.

10   2010) (finding lesser sanctions insufficient given opposing party's "history and pattern of grossly

11   insufficient discovery responses rendering them non-responsive").

12        In sum, defendants have acted at least willfully, if not in bad faith, and evidentiary

13   sanctions in the form of establishing facts for the purpose of facilitating resolution of this case are

14   warranted.  The court finds the facts provided in Exhibit 1, reflecting a subset of the facts

15   included in plaintiff's request, are established for purposes of this action.  This sanction, related to

16   plaintiff's requests 15 and 16, is just considering defendants' improper conduct.

17        **D.      Rule 37(b)(2)(A)(ii)**

18        Under Rule 37(b)(2)(A)(ii), the court may "prohibit[] the disobedient party from

19   supporting or opposing designated claims or defenses, or from introducing designated matters in

20   evidence[.]"  Plaintiff requests the court prohibit defendants from opposing his first, third and

21   fourth claims, which allege a violation of the Fourteenth Amendment Due Process Clause and

22   municipal liability under *Monell*.  Mem. at 23.  Plaintiff also requests the court "forbid Entity

23   Defendants from using any 'information, witnesses, or evidence on a motion or at trial within the

24   scope' of Requests 15 and 16 to prevent the prejudice that Plaintiff would suffer from Defendants

25   capitalizing on their discovery abuse."  *Id.* at 24.

26        Plaintiff's request to prohibit defendants from opposing his first, third and fourth claims is

27   neither just nor reasonably related to defendants' sanctionable conduct.  As noted, plaintiff sought

28   discovery of documents and communications related to personnel records of named defendants

21

and records of any disciplinary actions or investigations. *See* Joint Disc. Statement at 13–15.
Responsive information may help prove whether defendants had a policy; however, the
information would not have conclusively established either plaintiff's Fourteenth Amendment
due process claim or *Monell* liability claims.  Plaintiff's request for sanctions in the form of
prohibiting defendants from opposing his first, third and fourth claims is denied.  As noted,
previously, this order does not preclude plaintiff from filing motions in limine related to these
requests or propose specific jury instructions at trial.

As for plaintiff's second request, the requested sanction is just and reasonably related to
defendants' sanctionable conduct.  Defendants repeatedly informed the court they have no
responsive documents within the scope of plaintiff's requests 15 and 16.  Permitting defendants to
then turn around and use information, witness or evidence within the scope of those requests
would reward defendants' conduct and unduly prejudice plaintiff.  Defendants agreed at hearing
they should not be permitted to use documents they now represent do not exist.  Accordingly,
defendants shall not use any information, witness or evidence within the scope of those requests
in any future motion or at trial. *See, e.g.*, *Ochotorena v. Adams*, No. 05-01524, 2010 WL
1035774, at *4 (E.D. Cal. Mar. 19, 2010) (warning the defendant, should he stand on the
objection that he does not have responsive documents, "he will be precluded from using the
requested documents, or any documents of this kind, as evidence in support of summary
judgment, in opposition to any of Plaintiff's positions, and in any way during trial").

## IV.   ATTORNEY'S FEES AND COSTS

The court may award attorney's fees and costs associated with bringing a successful civil
contempt motion. *See Donovan v. Burlington N., Inc.*, 781 F.2d 680, 684 (9th Cir. 1986).  In its
prior order, the magistrate judge cautioned defense counsel she was "considering imposing
monetary sanctions, including but not limited to the costs incurred by plaintiff in bringing this
motion, to be borne solely by defense counsel."  Prior MJ Order (Apr. 3, 2024) at 6.  Plaintiff
interpreted that order as "invitin[g] Plaintiff to address the imposition of monetary sanction," and
argued the court should award plaintiff attorney's fees and costs associated with bringing the
motion. *See* Pl.'s Opening Br. at 27–29.  Determining whether an award of attorney's fees and

1  costs is warranted is more appropriate after full briefing of the matter, with documentary support

2  for the fees and costs requested.  Accordingly, plaintiff may move for reasonable attorneys' fees

3  and costs incurred in connection with bringing the instant motion to hold defendants in contempt

4  within 21 days.  The motion shall be noticed before the assigned magistrate judge in accordance

5  with the Local Rules.  *See* E.D. Cal. L.R. 302(c)(1).

6  **V.     CONCLUSION**

7          For the reasons above, plaintiff's motion to hold defendants in contempt is **granted** in

8  part.  Defendants are in contempt of the magistrate judge's discovery order.  In accordance with

9  Rule 37(b)(2)(A)(i) and (ii), the court imposes the following sanctions: 1) The court designates

10  the facts identified in Exhibit 1 as established for purposes of this action; and 2) The court

11  prohibits defendants from using any information, witness or evidence within the scope of

12  plaintiff's requests for production 15 and 16 in any future motion or at trial.  Plaintiff's motion for

13  attorney's fees and costs shall be noticed before the magistrate judge.

14          This order resolves ECF No. 123.

15          IT IS SO ORDERED.

16   DATED:  August 29, 2024.

CHIEF UNITED STATES DISTRICT JUDGE

EXHIBIT 1

Established Facts[4]

- Sacramento County and the Sacramento Sheriff's Office had a ~~further~~ longstanding practice, custom, and/or policy of refusing to discipline or otherwise hold detectives responsible for violations of constitutional rights, ~~which created and maintained a culture of impunity within the Sheriff Department that encouraged the abuse of constitutional rights. Compl., Dkt. 1, at ¶ 90.~~

- Even though Detective Stan Reed had admitted in open court to intentionally violating citizens' constitutional rights, the Sacramento Sheriff's Office never disciplined him. ~~*Id.* at ¶ 93.~~

- As in the investigation of Edward Case, Detective Stan Reed admitted in open court that his standard practice was to violate citizens' constitutional rights. ~~Once again, [T]~~he Sacramento Sheriff's Office never disciplined him. ~~On information and belief, [T]~~he Sacramento Sheriff's Office also never disciplined Defendants Robert Bell or Kay Maulsby. ~~*Id.* at ¶ 95.~~

- ~~Richard Alex Williams was convicted in 1998 of a 1996 murder. Like in the Galati Investigation, the lead detectives were Marci Minter and Stan Reed. The murder had been committed as a drive-by shooting, with witnesses reporting that the perpetrator was wearing a green shirt at the time. When Detectives Marci Minter and Stan Reed showed an eyewitness photograph for identification purposes, they had numerous photographs of Williams to choose from. They opted to withhold from the witness every picture of Williams except for the one in which he wore a green shirt. In contrast, none of the other individuals included in the photograph line-up were depicted wearing a green shirt. Notwithstanding their manipulation of the lineup,~~ Detectives Marci Minter and Stan Reed were never disciplined [for any manipulation of a lineup including Richard Alex Williams]. ~~*Id.* at ¶ 96.~~

- ~~On information and belief, the Claim Spreadsheet's data was entered by Sacramento County employees contemporaneously with Sacramento County's receipt of compensation claim forms. That data reflected the entirety of Sacramento County, the Sacramento District Attorney's Office, and the Sacramento Sheriff's Office's efforts to holistically track allegations of misconduct against the Sacramento Sheriff's Office. Those entities' self evidently incomplete and careless approach to tracking misconduct allegations is consistent with, and contributed to, Sacramento County's and the Sacramento Sheriff's Office's practice, custom, and/or policy of refusing to discipline or otherwise hold detectives responsible for violations of citizens' rights. *Id.* at ¶ 105.~~

- ~~On many occasions in the years leading up to~~ Jeremy Puckett's arrest and conviction, the same detectives that investigated and compiled the evidence against Jeremy Puckett intentionally violated other defendants' civil rights. ~~In many cases, they even admitted that they had done so. Yet [T]~~he Sacramento Sheriff's Office ~~refused to~~ [did not] discipline the~~m~~ [same detectives that investigated and compiled the evidence against Jeremy Puckett for other violations of defendants' civil rights]. ~~The culture of impunity that arose as a result of the Sacramento Sheriff's Office's policy, practice, or custom~~

---

[4] The court sets out the facts plaintiff requests the court finds established, but displays those facts the court does not find established at this time in "strikethrough" format. The facts the court does find established are displayed in conventional format, without text stricken. The court includes in brackets some text added provide context.

24

~~emboldened its detectives to disregard civil rights and pursue convictions at all costs. This ultimately resulted in the detectives' violation of Jeremy Puckett's rights, which caused his wrongful conviction and incarceration. *Id.* at ¶ 111.~~

- Sacramento County and the Sacramento District Attorney's Office had a ~~further~~ practice, custom, and/or policy of refusing to discipline or otherwise hold prosecutors responsible for violations of citizens' rights, ~~which created and maintained a culture of impunity within the Sacramento District Attorney's Office.~~ *Id.* at ¶ 112.

- ~~On information and belief, i[I]n the years leading up to and following Jeremy Puckett's~~ wrongful prosecution and conviction, Sacramento County and the Sacramento District Attorney's Office, through its policymakers, ~~deliberately or recklessly~~ failed to monitor its employees' failure to disclose exculpatory information. Sacramento County and the Sacramento District Attorney's Office failed to or chose not to centrally track and record alleged *Brady* violations, or to otherwise perform any review of agency employees' alleged failures to comply with their *Brady* obligations. ~~This administrative failure to monitor *Brady* violations reflected and maintained those entities' practice, custom, and/or policy of refusing to discipline or otherwise hold prosecutors responsible for violations of citizens' constitutional rights. *Id.* at ¶ 119.~~

- ~~On information and belief, this data reflected the entirety of Sacramento County and the Sacramento District Attorney's Office's efforts to holistically track allegations of misconduct against the Sacramento District Attorney's Office. Those entities' self-evidently incomplete and careless approach to tracking misconduct allegations is consistent with, and contributed to, Sacramento County's and the Sacramento District Attorney's Office's practice, custom, and/or policy of refusing to discipline or otherwise hold prosecutors responsible for violations of citizens' constitutional rights. *Id.* at ¶ 124.~~

- ~~Sacramento County abdicated its responsibility to monitor whether county employees at the Sacramento Sheriff's Office or Sacramento District Attorney's Office were violating citizens' constitutional rights, and failed to ensure that employees who violated constitutional rights were appropriately disciplined. For the most part, Sacramento County, by and through its policymakers, simply ignored allegations and findings of misconduct against these agencies by only tracking allegations made in compensation claim forms submitted to the county's Clerk of the Board of Supervisors. In doing so,~~ Sacramento County failed to ~~even~~ track allegations from court pleadings that were not submitted on a corresponding claim form, as well as *Brady* violation findings or other prosecutorial misconduct findings that arose in the course of criminal prosecutions but did not result in submission of a compensation claim. ~~*Id.* at ¶ 128.~~

- ~~Consistent with its indifference to monitoring constitutional rights violations, Sacramento County also failed to ensure that the Sacramento Sheriff's Office and Sacramento District Attorney's Office were monitoring allegations and findings of prosecutorial misconduct. Even where Sacramento County employees admitted to intentionally violating citizens' constitutional rights, Sacramento County failed to take any efforts to ensure that those employees were disciplined. *Id.* at ¶ 130.~~

- ~~In addition to the agency-specific policies, patterns, and/or customs of Sacramento County, the Sacramento Sheriff's Office, and the Sacramento District Attorney's Office described above, Jeremy Puckett's wrongful conviction and incarceration were caused by Sacramento County's broader policy, practice, or custom of failing to monitor and discipline county employees who violated constitutional rights. On many occasions in the years leading up to Jeremy Puckett's arrest and conviction, Sacramento County detectives~~

~~and prosecutors manipulated evidence to disadvantage criminal defendants, including by suppressing exculpatory evidence in violation of *Brady v. Maryland*. Yet those county law enforcement employees were not disciplined, and Sacramento County largely failed to even monitor their misconduct. The culture of impunity that arose as a result of this policy, practice, and/or custom emboldened detectives and prosecutors to disregard constitutional rights and pursue convictions at all costs. This ultimately resulted in the Individual Defendants' violations of Jeremy Puckett's rights, which caused his wrongful conviction and incarceration. *Id.* at ¶ 131.~~

- As of Jeremy Puckett's arrest and prosecution, Sacramento County and the Sacramento Sheriff's Office, by and through its policymakers, had developed, created, and maintained a longstanding policy, practice, and/or custom of refusing to discipline or otherwise hold detectives responsible for violations of citizens' rights. ~~*Id.* at ¶ 149.~~

- Sacramento County, by and through its policymakers, had developed, created, and maintained a longstanding policy, practice, and/or custom of refusing to discipline or otherwise hold any law enforcement employees responsible for violations of citizens' rights. ~~*Id.* at ¶ 150.~~

- ~~These unconstitutional policies, practices, and/or customs of Sacramento County and the Sacramento Sheriff's Office were maintained and encouraged by Sacramento County's and the Sacramento Sheriff's Office's administrative failures to comprehensively monitor and address (i) formal claims or court filings alleging *Brady* violation by Sacramento Sheriff's Office employees, (ii) settlement agreements pertaining to allegations of *Brady* violations by Sheriff employees, or (iii) civil judgments reflecting findings of *Brady* violations by Sacramento Sheriff's Office employees. They were further maintained and encouraged by those entities' refusal to discipline even those Sacramento Sheriff's Office employees who admitted to violations of citizens' rights. *Id.* at ¶ 151.~~