UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY PHILLIP PUCKETT,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SACRAMENTO, et al.,<br><br>Defendants. | No. 2:22-cv-0350-KJM-CKD<br><br><br><br>ORDER |

Before the court are plaintiff's motion to compel (ECF Nos. 206 & 212 (Joint Statement)) and defendants' motion for protective order (ECF Nos. 207 & 211 (Joint Statement)). Plaintiff served his first discovery requests in December 2022, and the parties have been in constant discovery litigation for almost two years.

On September 25, 2024, the undersigned held a hearing via Zoom on both motions. Alison Draikiwicz, Harrison Frahn, Ziwei Xiao, and Karyn Sinunu-Towney appeared on behalf of plaintiff. John Whitefleet appeared on behalf of defendants. At the conclusion of the hearing, the court granted plaintiff's motion to compel (ECF No. 206), as set forth in more detail below, and took the motion for protective order (ECF No. 207) under submission. This order follows.

////

////

////

1

I.    Background

The complaint in this 42 U.S.C. § 1983 case states that, on March 3, 2020, the Superior Court of Sacramento granted plaintiff's petition for writ of habeas corpus, finding that plaintiff's Brady rights were violated with respect to his conviction for the 1998 murder of Anthony Galati. ECF No. 1, ¶ 73. Plaintiff was arrested in 2001 and spent almost nineteen in prison before the writ was granted. Id. Named as defendants are County of Sacramento, the Sheriff's Office, the District Attorney's Office, several individual detectives, a Deputy District Attorney, and a forensic pathologist. Id., ¶¶ 11-20.

Based on the Superior Court's findings that defendants unlawfully withheld potentially exculpatory evidence (id., ¶¶ 79-80), the complaint asserts that the Sheriff's Office's "customary acceptance of evidence manipulation," and the District Attorney's office's "customary indifference to prosecutorial misconduct," gave rise to a "culture of impunity" in those agencies.

As to agency recordkeeping, the complaint alleges in part:

- On information and belief, in the years leading up to and following Jeremy Puckett's wrongful prosecution and conviction, Sacramento County and the Sacramento District Attorney's Office . . . deliberately or recklessly failed to monitor its employees' failure to disclose exculpatory information. [They] failed or chose not to track and record alleged Brady violations, or otherwise perform any review of agency employees' alleged failures to comply with their Brady obligations. Id., ¶ 119.

- On information and belief, . . . [they] deliberately or recklessly failed to monitor civil judgments and settlements that found the [DA's Office] had committed prosecutorial misconduct, including Brady violations. Id., ¶ 121.

- [The agencies showed] utter indifference to properly recording and responding to claims alleging civil rights violations by [County prosecutors]. Id., ¶ 122.

- Sacramento County abdicated its responsibility to monitor whether county employees [in the Sheriff's or DA's Office] were violating citizens' constitutional rights. . . . For the most part, Sacramento County . . . simply ignored allegations and findings of misconduct against these agencies by only tracking allegations made in compensation claim forms submitted to the county's clerk of the Board of Supervisors. In doing so, Sacramento County failed even to track allegations from

court pleadings that were not submitted on a corresponding claim form, as well as <u>Brady</u> violation findings or other prosecutorial misconduct findings that arose in the court of criminal prosecution but did not result in submission of a compensation claim. <u>Id.</u>, ¶ 128.

Claims 3 and 4 seek to hold Sacramento County, the Sheriff's Office, and the DA's Office liable for unconstitutional policies or customs pursuant to <u>Monell v. Dept. of Soc. Servs.</u>, 436 U.S. 658 (1978) (municipal entity is liable under § 1983 only if plaintiff shows that his constitutional injury was caused by employees acting pursuant to the municipality's policy or custom). "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." <u>Board of County Comm'rs. of Bryan County v. Brown</u>, 520 U.S. 397, 404 (1997). Plaintiff asserts that the Sheriff's Office had a policy/custom "of improperly manipulating evidence to disadvantage criminal defendants" (ECF No. 1, ¶ 148) and the DA's Office had a policy/custom of "selectively withholding exculpatory evidence . . . from defense teams" and refusing to discipline prosecutors from violating citizens' rights (<u>id.</u>, ¶¶ 155-157).

I.      <u>Plaintiff's Motion to Compel (#206)</u>

There is a certain tension in plaintiff's position in the motion to compel. On the one hand, the complaint repeatedly alleges that the County kept terrible records about <u>Brady</u>-related misconduct. On the other hand, the motion seeks such records. Defendants say they don't exist. The real conflict is perhaps less about obtaining the County's (possibly nonexistent) "audits" of <u>Brady</u> misconduct, and more about documenting, to a reasonable level of certainty, that few or no such records exist.[1] Any such records that do exist are relevant and discoverable, subject to the

---

[1] As plaintiff notes, he is not required to prove the existence of responsive documents before he requests them. Joint Statement at 8, citing <u>Taylor v. Cnty. of Calaveras</u>, 2019 WL 6341131, at *4 (E.D. Cal. Nov. 27, 2019) ("[O]bjections that a request assumes facts not in evidence, calls for speculation, or lacks foundation are not proper in the course of written discovery.").

3

usual discovery rules, which—after two years of discovery litigation—all parties should be familiar with by now.

Plaintiff seeks documents responsive to the following three requests:

1. **Request No. 1.** Documents sufficient to show all Audits of Your systems, operations, policies, or practices—between January 1, 1990 and December 31, 2005—that concern or relate to the discipline of your employees, agents, and/or contractors arising out of constitutional or civil rights violations.

Defendants objected to this request on various grounds and responded as follows: "[N]o such responsive documents ever existed for the time frame requested, and therefore Defendant is unable to respond."  (Joint Statement at 7-8.)

2. **Request No. 3.**  For each Audit identified in response to Request 1 . . . , all documents and communications, whether formal or informal, regarding the results, findings, recommendations, or other outcomes of each Audit.

ECF No. 206 at 4.  Defendants responded to this request: "Not applicable as no documents were identified.  To the extent necessary, the responses above are incorporated herein."  (Joint Statement at 8.

Plaintiff served these RFPs on May 7, 2024.  To date, defendants have provided no responsive documents, and it is not clear they have conducted any searches for responsive documents, or even questioned their clients about the existence of such documents.  Plaintiff seeks "an order . . . requiring [defendants] to search for and produce responsive documents as well as certify in writing, under oath, that they conducted reasonable searches."  Id. at 3.

**Overbreadth as to time.**  In the Joint Statement, defendants argue that the 15-year period covered by these requests is overbroad for Monell discovery.  Joint Statement at 11.  However, defendants did not raise this time-period objection prior to the Joint Statement, and plaintiff argues they have waived it.  In her April 15, 2024 order, Judge Barnes stated: "The undersigned has repeatedly advised defense counsel that objections not raised in written response to a discovery [request] may not be raised in briefing the discovery motion."  ECF No. 164 at 6, citing

4

ECF No. 137 at 8 ("As the defendants have been repeatedly informed, 'objections not raised in a written response to discovery may not be raised for the first time in a discovery motion." [citing cases]).  At this point, defendants have waived the time-period objection.

**Other objections.**  Having reviewed defendants' other objections to the requests (vague and overly broad as to undefined terms, "makes no sense," burdensome, etc.), none appear to have merit.  See, e.g., Marti v. Baires, 2012 WL 2029720, *5 (E.D. Cal. June 5, 2012) ("boilerplate objections do not suffice and there is no ground upon which to reasonably argue otherwise. . . . Defendant could and should have made a reasonable effort to respond.") (emphasis in original).

The real issue is that defendants need to conduct a serious, good-faith search for the requested audits and related documents, and demonstrate that they have done so.  As Judge Barnes stated in her February 12, 2024 order: "[I]n responding to discovery requests, a reasonable inquiry must be made, and if no responsive documents or tangible things exist . . . the responding party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence."  ECF No. 80 at 3 (case citations omitted).  Thus, the court grants plaintiff's motion to compel as set forth below.

II.     Defendants' Motion for Protective Order (ECF No. 207)

In their motion, defendants seek an order finding that plaintiff's Rule 45 subpoena for audit-related documents is improper and/or redundant to the requests discussed above.

On June 18, 2024, plaintiff caused a subpoena to issue to the Sacramento County Board of Supervisors seeking documents concerning audits "that concern or relate to constitutional or civil rights violations" and Brady issues between January 1, 1990 and December 31, 2005.  ECF No. 211-1 at 25-32.  Defendant County issued objections to the subpoena (id. at 34-38), and plaintiff did not respond in writing to the objections.  See Joint Statement (ECF No. 211 ) at 3.

5

Plaintiff states that, in light of defendants'

> continued discovery obstructions and failure to conduct even a basic search for audit-related documents, Plaintiff sought discovery from entities that may have audited Entity Defendants. On June 18, 2024, Plaintiff issued subpoenas to the Sacramento County Board of Supervisors, the City of Sacramento Office of Public Safety Accountability, and the Sacramento County Office of Inspector General. The parties met and conferred over Zoom on June 28, 2024, but were unable to resolve their dispute.

Joint Statement at 4-5.

Defendants argue that the Board of Supervisors (BOS) is a legislative body and not a separate entity from the County. Similarly, they argue that the Office of the Inspector General (OIG) is a "contracted position who reports to the BOS" and, as such, is part of the legislative body and not a separate entity. Joint Statement at 6. Defendants contend that, because these entities are subsumed within Defendant County, requests for production, not Rule 45 subpoenas, are the proper method of seeking this discovery. See Trevino v. Burke, 2024 WL 2853262, *1 (E.D. Cal. June 5, 2024) ("[A] subpoena is not an appropriate method of requesting documents from a party to a case. Rather, a Rule 45 subpoena should be directed to non-parties for information that cannot be readily obtained from a party to the case." (Internal citations omitted.)

Plaintiff counters that, first, the BOS and the OIG are "functionally separate" entities from the County under California law. Joint Statement at 8. Second, they argue that defendants' failure to conduct any searches for responsive discovery to the audit RFPs "necessitate[e] a subpoena to BOS and OIG." Joint Statement at 7. At the September 25 hearing, plaintiff agreed to "set aside" his argument as to the BOS and focus on whether the subpoena was proper as to the OIG.

Federal Rule of Civil Procedure 45 permits a party to issue a "subpoena commanding the person to whom it is directed to attend and give testimony or to produce and permit inspection of

6

designated records or things." Fed. R. Civ. P. 45(a)(1)(C). The recipient may object to a subpoena, or move to quash or modify it. Fed. R. Civ. P. 45(c)(2), 45(c)(3). "The district court has wide discretion in controlling discovery" and "will not be overturned unless there is a clear abuse of discretion." Little v. City of Seattle, 863 F.2d 681, 685 (9th Cir.1988). "[T]he court that issued the subpoena ... can entertain a motion to quash or modify a subpoena." S.E.C. v. CMKM Diamonds, Inc., 656 F.3d 829, 832 (9th Cir.2011).

District courts may issue protective orders "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," that would result from the disclosure of certain discovery. Fed. R. Civ. P. 26(c)(1)(A). The person seeking a protective order has the burden of proving that good cause exists for the entry of the order. Phillips ex rel. Estates of Byrd v. Gen. Motors Corp., 307 F.3d 1206, 1211 (9th Cir. 2002). Much like Rule 45(d)(3), "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984).

Assuming arguendo that the OIG is a non-party functionally separate from the County, as plaintiff argues, the question is whether a Rule 45 subpoena for audit-related documents is appropriate. In Modica v. Russell, 2015 WL 13653879, *2 (E.D. Cal. Sept. 8, 2015), the court granted a plaintiff's request for issuance of a subpoena for documents to the OIG, as "plaintiff . . . demonstrated the relevance of the requested documents and the fact that they are uniquely available through the OIG." (Emphasis added.) However, the court noted,

> [P]laintiff is reminded that documents likely to be within the possession, custody or control of defendants should be sought through discovery, while subpoenas should be used only to obtain documents that are not available from defendants.

Id., n.1 (internal citations omitted).

Here, while plaintiff is understandably frustrated by defendants' failure to search for responsive documents to the audit RFPs, he is attempting to use a non-party subpoena as a workaround to obtaining documents not necessarily "uniquely available" to the OIG. It is not appropriate to subpoena non-parties in the hope they might be more cooperative than defendants in producing documents available to both. Moreover, as a practical matter, the parties agreed at the hearing that the OIG was not formally created until 2008, outside the time period covered by plaintiff's requests, and that plaintiff has access to all published OIG reports on the agency's website. As discussed above with respect to the motion to compel, it appears that any audit-related documents can be "readily obtained" from defendants as long as they conduct a good-faith search and either (1) produce the documents, or (2) plausibly show that reasonable searches turned up no such documents. Thus—assuming defendants fulfill their discovery obligations as to any audit-related materials, as ordered herein—they have made a sufficient showing of good cause for a protective order concerning the subpoena.

Accordingly, IT IS HEREBY ORDERED THAT:

1. Plaintiff's motion to compel (ECF No. 206) is GRANTED;

2. No later than fourteen (14) days from the date of this order, defendants shall produce any and all documents responsive to the requests at issue, including a signed declaration explaining what searches and/or inquiries were conducted for responsive documents, even if none are ultimately found to exist.

3. Defendants' motion for protective order (ECF No. 207) is GRANTED, such that the subpoena at issue is effectively quashed.

Dated: September 25, 2024

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/puckett350.mtc&mpo.order