1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JEREMY PHILLIP PUCKETT,                    No.  2:22-cv-0350-KJM-CKD

12              Plaintiffs,

13        v.                                    ORDER

14   COUNTY OF SACRAMENTO, et al.,

15              Defendants.

16

17        Before the court is plaintiff's August 30, 2024, motion to compel (ECF Nos. 231 & 244

18   (Joint Statement)).  On October 9, 2024, the undersigned held a hearing via Zoom on the motion.

19   Ziwei Xiao and Harrison Frahn appeared on behalf of plaintiff.  John Whitefleet appeared on

20   behalf of defendants.  At the conclusion of the hearing, the court took the motion under

21   submission.

22        On June 28, 2024, plaintiff served his Second Set of Interrogatories and Fourth Set of

23   Requests for Production of Documents on the three institutional defendants: the County, the DA's

24   Office (DA), and the Sheriff's Office (SO).   Joint Statement at 2.  These requests seek

25   information relating to (1) prior instances of constitutional rights violations committed by

26   defendants' employees; (2) defendants' training and discipline of employees related to

27   constitutional rights violations; and (3) files from multiple past homicide investigations.  Joint

28   Statement at 2-3.  Also at issue are requests concerning the preservation and destruction of

                                                1

evidence in the Galati case.  Joint Statement at 23-25.  Plaintiff asserts that defendants have responded with boilerplate objections and a "near-blanket refusal" to provide the requested information.  Joint Statement at 3.

I.   Case Background

As background to this discovery dispute, it is helpful to review what is at issue in this case. See also ECF No. 243 at 2 (summarizing complaint).  The district judge's March 9, 2023, order, determining which claims survived dismissal, states that, "[i]n broad strokes, plaintiff alleges the defendants deprived him of his constitutional rights by withholding or ignoring exonerating evidence."  ECF No. 36 at 2.

That order noted that plaintiff's counsel submitted a public records request "for information on any prosecutorial misconduct between 1990 and 2005."  ECF No. 36 at 4.  In response,

> the County produced a spreadsheet 'reflecting data from claim forms submitted to the County . . . to seek compensation from Sacramento County.  Each row on the spreadsheet contained a field vaguely describing the claim, including rows with phrases such as 'civil rights violation' or 'police misconduct.'

ECF No. 36 at 4-5 (record citations omitted).  This spreadsheet, attached to the complaint as Exhibit C (ECF No. 1-3, Claim Spreadsheet), shows that a number of listed claims over a 15-year period were directed to the SO, others to the DA, and others to various other County agencies.

The district court's March 2023 order continued:

> Plaintiff alleges 'a substantial number of [these] claims against the Sacramento Sheriff's Office . . . were based on allegations of evidence manipulation, including suppression of exculpatory evidence.

ECF No. 36 at 4-5 (record citations omitted).  As to the DA, the district court noted that

> [r]elying on the County's spreadsheet, plaintiff identifies 46 claims against the District Attorney's Office, **36 of which were between 1995 and 2002.**  Plaintiff alleges, on information and belief, 'a substantial number of [these] claims were based on allegations of

2

evidence suppression.

ECF No. 36 at 5 (emphasis added; record citations omitted).

The district judge determined that plaintiff's <u>Monell</u> claims against the County and the SO, "alleging a practice or custom of manipulating and suppressing evidence and refusing to discipline officers who violated persons' constitutional rights[,]" survived dismissal at the pleading stage.  ECF No. 36 at 13-15.  As to the County and SO, the district court's order noted that

> "[L]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy.  <u>Trevino v. Gates</u>, 99 F.3d 911, 918 (9th Cir. 1996).  **The pattern of incidents must reflect 'similar constitutional violations.'**  <u>Connick v. Thompson</u>, [563 U.S. 51, 62 (2011)].  Plaintiff describes two instances of violations, separated by eight years, in which Sheriff's deputies committed similar constitutional violations in the form of evidence suppression; his own case and a similar case in 2008[.]  Compl. ¶ 109.  The other alleged violations are unrelated to evidence suppression.  <u>Id.</u>, ¶¶ 91-97. . . . However, [from the Claims Spreadsheet], plaintiff identified 79 claims as labeled 'civil rights violations' or 'police misconduct.] . . . Identifying **79 civil rights violations over seven years** brings plaintiff's claim from the merely possible to plausible and puts defendants adequately on notice of the allegations.

ECF No. 36 at 13-14 (emphasis added).  The undersigned assumes the district judge was referring to the seven-year period mentioned earlier in her order: "between 1995 and 2002."

As to the DA, the district judge noted plaintiff's allegations that the DA has a policy of

> selectively withholding exculpatory evidence relevant to criminal prosecutions from defense teams" and "failing to hold prosecutors accountable" for the ensuing <u>Brady</u> violations.  Compl. ¶¶ 112, 117.  Thus, plaintiff asserts <u>Monell</u> liability against this Office under the same two theories: (1) pervasive customs and policies and (2) failure to train or discipline.

ECF No. 36 at 15.  The district court continued:

> Using the County's spreadsheet, plaintiff identified **46 claims against the [DA] between 1990 to 2005**, each with either vague

> descriptions [regarding civil rights violations] or no descriptions at all. . . . In showing **46 potential claims over a specific period of time**, plaintiff has demonstrated his allegations are sufficiently 'plausible' [to survive dismissal].

ECF No. 36 at 17 (emphasis added).  The district court noted defendants' arguments that plaintiff had not pointed to "any concrete examples of specific <u>Brady</u> violations."  <u>Id.</u>  However, the order continued, "plaintiff at this stage cannot be faulted because defendants refuse to search their files or provide detailed information."  <u>Id.</u>

In sum, as to plaintiff's <u>Monell</u> claims against the County and SO, the district judge referred to a seven-year period (1995-2002) in which misconduct claims were potentially relevant.  As to the <u>Monell</u> claim against the DA, the district judge considered the entire 15-year period covered by plaintiff's public records request as relevant for purposes of the motion to dismiss.

Since then, as best the undersigned can tell, plaintiff's public records request, spanning 1990-2005, has effectively defined the scope of case.  However, even if a plaintiff requests public records from a 15-year period and attaches a summary to the complaint, it does not necessarily follow that fifteen years' worth of materials are relevant for discovery purposes.  To determine relevance, one must look to the facts of the case itself.  Here, plaintiff was taken into custody in April 2001 and sentenced in March 2002.  Any suppressed evidence in plaintiff's own case presumably dates back no earlier than 1998, when Galati was killed.  <u>See</u> Cmplt. ¶¶ 2, 4, 26. With this in mind, the court considers the discovery requests at issue.

II.    <u>Meet and Confer</u>

As the previously-assigned magistrate noted in her March 20, 2024 order, Local Rule 251(b) requires that "[c]ounsel for all interested parties shall confer in advance of the filing of the motion or in advance of the hearing on the motion in a good faith effort to resolve the differences that are the subject of the motion."  ECF No. 119 at 2.

As to the Fourth Set of RFPs, defendants assert that "no meet and confer was accomplished[.]" Joint Statement at 4.  Plaintiff contends they did meet and confer about the Fourth Set of RFPs on August 28, 2024, before plaintiff filed his motion.  <u>Id.</u>; <u>see</u> ECF No. 245

(Wein Decl.) at 3.  Plaintiff submits an August 29, 2024, email exchange documenting the topics discussed, including the "Fourth Set of Requests for Production."  ECF No. 245-18 at 5-6.

Whether or not counsel are technically meeting and conferring as to their various disputes, it is obviously not working.  As evidenced by the docket of this action, the discovery process has broken down in a way seldom seen in federal litigation.  See Brill v. Napolitano, 2010 WL 11512400, *1 (C.D. Cal. May 12, 2010) ("The whole system of [c]ivil adjudication would be ground to a halt if the courts were forced to intervene in even a modest percentage of discovery transactions. . . . Here, the parties have unnecessarily burdened the Court with discovery disputes they should have been able to resolve themselves.").  Thus, going forward, as discussed at the hearing, the undersigned will require the parties to meet and confer in person, in her presence, before considering any additional motion(s) to compel.

III.    Applicable Law

The discovery process is subject to the overriding limitation of good faith, and callous disregard of discovery responsibilities cannot be condoned.  Asea, Inc. v. Southern Pac. Transp. Co., 669 F.2d 1242, 1246 (9th Cir. 1981) (quotation marks and citation omitted).  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed R. Civ. P. 26(b)(1).  "Relevance for purposes of discovery is defined very broadly."  Garneau v. City of Seattle, 147 F.3d 802, 812 (9th Cir. 1998).

Under Rule 37 of the Federal Rules of Civil Procedure, "a party seeking discovery may move for an order compelling an answer, designation, production, or inspection."  Fed. R. Civ. P. 37(a)(3) (B).  The court may order a party to provide further responses to an "evasive or

incomplete disclosure, answer, or response." Fed. R. Civ. P. 37(a)(4).  "The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1).  Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections."  Givens v. CDCR, 2023 WL 6313986, *1 (E.D. Cal. Sept. 28, 2023), citing Bryant v. Ochoa, 2009 WL 1390794 at *1 (S.D. Cal. May 14, 2009).  "As a threshold matter, . . . an objecting party must specifically establish the nature of any alleged burden, usually by affidavit or other reliable evidence."  Thomas v. Cate, 715 F. Supp. 1012, 1032 (E.D. Cal. 2010) (collecting cases).

Rule 33 of the Federal Rules of Civil Procedure provides, in part, that a party may serve upon any other party written interrogatories relating to any matters which can be inquired into under Rule 26(b). Fed. R. Civ. P. 33(a)(2).  Rule 33 requires that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3).  Rule 34 provides for the production of documents and things, requiring a party to produce or permit inspection of documents responsive to a request for production of documents when such documents are in the party's "possession, custody or control."  Fed. R. Civ. P. 34(a)(1).  A party has an obligation to conduct a reasonable inquiry into the factual bases of its responses to discovery.  Brill, 2010 WL 11512400, at *2 (collecting cases); see also Anderson v. Cryovac, Inc., 862 F.2d 910, 929 (1st Cir. 1988) ("Once a proper discovery request has been seasonably propounded, we will not allow a party sentiently to avoid its obligations by filing misleading or evasive responses, or by failing to examine records within its control.").

///

///

///

6

IV.     Plaintiff's Motion to Compel

**A. Pattern of Constitutional Violation Requests**

**1.  "All incidents" of compensation for evidence-based rights violations**

DA Interrogatory No. 7; SO Interrogatory No. 9; County Interrogatory No. 6.  Plaintiff

requests that the DA's office, the Sheriff's Office (SO) and the County identify "all incidents"

between 1990 and 2005 in which an individual was "compensated by you" for a claimed or actual

violation of his constitutional rights "based on the withholding or manipulation of evidence" in

criminal cases.  ECF No. 244 at 5-6.

Plaintiff claims that fifteen years' worth of "compensation" information is relevant based

on the Claims Spreadsheet, as previously determined by the district court and the prior magistrate

judge.  ECF No. 244 at 11-12.

Defendants asserts various objections, including overbreadth as to time, that "the

underlying documents from which the data was entered no longer exist for the requested

timeframes," and that defendants have "insufficient information to respond to this request."  ECF

No. 244 at 6.

As to overbreadth as to time, the previously-assigned magistrate judge noted that

> discovery-related disputes involving Monell claims . . . often require
> a broad and substantial amount of discovery that would not be
> involved if the plaintiff sued only the individuals directly involved in
> the deprivation of his rights.  Awalt v. Marketti, 2012 WL 6568242,
> at *3 (N.D. Ill. Dec. 17, 2012).  The very nature of a Monell claim
> often necessarily implicates burdensome, but not unduly
> burdensome, discovery.  See id. at *7 ("the fact that Monell claims
> implicate a potentially large number of events taking place in an
> organization over a period of time, they naturally, and necessarily
> require extensive and often burdensome discovery.").

ECF No. 137 at 3.  Certainly, Monell claims implicate numerous events taking place over a

period of time.  However, a 15-year period of discoverable events may be an outlier in Monell

litigation.  In the <u>Awalt</u> case cited above, the court found plaintiff's request for documents

spanning a five-year period prior to the incident at issue "reasonably calculated to lead to the

discovery of evidence that is relevant and admissible to prove her <u>Monell</u> claims."  2012 WL

6568242, *6 (collecting cases)[1].

> "Typically," a California district court recently wrote,

> > the relevance standard is broad in scope and "encompass[es] any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in a case." <u>Doherty v. Comenity Capital Bank & Comenity Bank</u>, 2017 WL 1885677, at *2 (S.D. Cal. May 9, 2017). **Relevance, however, is not without limits.** <u>Id.</u> **. . . [T]**o fall within the scope of discovery, the information must also be "proportional to the needs of the case," requiring lawyers to "size and shape their discovery requests to the requisites of a case" while "eliminat[ing] unnecessary or wasteful discovery." Fed. Civ. R. P. 26(b)(1); <u>Cancino Castellar v. Mc</u>Aleenan, 2020 WL 1332485, at *4 (S.D. Cal. Mar. 23, 2020) (quoting Roberts v. Clark Cty. Sch. Dist., 312 F.R.D. 594, 603 (D. Nev. 2016)).

<u>Hipschman v. Cty. of San Diego</u>, 2024 WL 3206909, *7 (S.D. Cal. June 26, 2024) (emphasis

added).  In <u>Hipschman</u>, plaintiff requested defendant County to produce defendants' entire

personnel files "from the date of their hiring . . . to present" with respect to a <u>Monell</u> claim.  <u>Id.</u> at

**2-3.  Defendant objected that "the request is not limited to a reasonable amount of time before

the incident at issue[.]"  <u>Id.</u> at *3.  The court found that the request, "as written, is overbroad" and

sustained the County's objection "regarding the timing of the discovery request and finds five

years predating the incident through approximately one year after the incident to be the

---

[1] The <u>Awalt</u> court further noted that

> courts in this district have found <u>Monell</u>-related discovery requests comparable to Plaintiff's appropriate and not unduly burdensome. <u>See, e.g.</u>, <u>Padilla v. City of Chicago</u>, No. 06 C 5462, 2011 WL 3651273, *4 (N.D. Ill. Aug.18, 2011) (setting aside Magistrate Judge's discovery ruling and granting plaintiff's motion to compel production of documents related to police misconduct over **a five-year period**); <u>Johnson v. City of Joliet,</u>, 2007 WL 495258, *4 (N.D. Ill. Feb.13, 2007) (ordering production of any documents relating to complaints or lawsuits against city's Building Inspections and Permit Department over **a five-year period** in a case where plaintiff alleged that the city's building inspector directed the demolition of her garage based on her race).

<u>Id.</u> at 6 (emphasis added).

8

appropriate time frame."  Id. at *7 ("All of these requests are limited to the time period of June

27, 2015 through December 31, 2021.").

However, in Marsh v. Cty. of San Diego, 2008 WL 11411591 (S.D. Cal. Sept. 23, 2008),

a case concerning a 1983 murder conviction set aside on habeas review, the court on

reconsideration determined that plaintiff could depose a County witness about a 21-year period

for his Monell/Brady claim.  The court allowed plaintiff to depose the person most

knowledgeable about "the County's compliance with Brady . . . from the time period from March

1983—August 2004 as it relates to the Monell claim".  Id. at *3.  The Marsh court reasoned that

the complaint "indicates that the Monell cause of action covers the period beyond conviction. . . .

Therefore, the deposition of the PMK regarding the County's compliance with Brady . . . is

relevant to the Monell claim which includes the period after conviction and until his release from

prison in August 2004."[2]  Though the facts are similar to the instant case, Marsh has not been

cited for this finding, and the 21-year period appears to be an outlier for Monell discovery.

Here, the seven-year period noted by the district judge (1995-2002) seems more in

keeping with normal Monell discovery than the 15-year period covered by plaintiff's public

records request.  At the hearing, plaintiff's counsel indicated that, if the period of discovery were

to be narrowed, it could conceivably be narrowed to 1995-2002.  This covers three years before

Galati's death until the year plaintiff was sentenced, and thus bears some relationship to the facts

in the case.  Based on the foregoing, the undersigned will sustain defendants' objection of

overbreadth as to time.

As to defendants' standard assertion that the requested information does not exist, another

court has explained:

> A responding party is not generally required to conduct extensive
> research in order to answer an interrogatory, but **a reasonable effort
> to respond must be made. If a party cannot furnish details, the
> party should say so under oath and explain why and set forth the
> efforts used to obtain the information; the party cannot plead
> ignorance to information that is from sources within his control.**

---

[2] Here, plaintiff was released from prison in 2020.  Cmplt. ¶ 2.  Plaintiff's requested Monell
discovery spans the time from eight years before Galati's death (1990), through plaintiff's
investigation and conviction, to fifteen years before he was released from prison (2005).

1
2
3
4

> Of course, if the answer states that no record exists, the court cannot compel the impossible. A sworn answer indicating a lack of knowledge and no means of obtaining knowledge is not objectionable. The responding party has a duty to supplement any responses if the information sought is later obtained or the response provided needs correction. Fed. R. Civ. P. 26(e)(1)(A).

5
6
*Givens*, 2023 WL 6313986, *13 (emphasis added; internal citations and quotation marks omitted). Defendants must make reasonable efforts to respond, as set forth above.

7
8
All other objections to this request are overruled. The court will grant plaintiff's motion as to this request for the period of 1995-2002.

9
**2. Various information as to "all incidents" above**

10
11
12
13
14
15
DA Interrogatory No. 8, SO Interrogatory No. 10, County Interrogatory No. 7. Plaintiff requests several types of information "for all incidents listed above": "For all incidents listed above, identify all state or federal case numbers associated with the incident, the amount of compensation received, the evidence that was withheld or manipulated, and all of your employees that were involved [or claimed to be involved] in the withholding or manipulation of the relevant evidence." ECF No. 244 at 6.

16
17
18
19
20
21
22
23
Defendants object that the request is vague as to "all state and federal case numbers associated with the incident"—as it does not specify civil or criminal cases—and vague as to "all of your employees that were involved." "The party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity by demonstrating that mere tools beyond mere reason and common sense are necessary to attribute ordinary definitions to terms and phrases." *Thomas*, 715 F. Supp. 2d. at 1030 (collecting cases). Here, "all" cases and "all" employees involved in the listed incidents of compensation for evidence-based violations in intelligible through common sense. This objection is overruled.

24
25
26
27
28
Defendants further object that the "request contains improper subparts" and "appears to be 5 separate requests." ECF No. 244 at 6. Rule 33(a) provides that "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Fed. R. Civ. P. 33(a)(1), "Although the term 'discrete subparts' [in Rule 33] does not have a precise meaning, courts generally agree that

1    'interrogatory subparts are to be counted as one interrogatory ... if they are logically or factually

2    subsumed within and necessarily related to the primary question.'" Trevino v. ACB Am., Inc.,

3    232 F.R.D. 612, 614 (N.D. Cal. 2006) (quoting Safeco of Am. v. Rawstron, 181 F.R.D. 441, 445

4    (C.D. Cal. 1998)).  "Determining whether an interrogatory counts as a separate question requires

5    a pragmatic approach.  Once a subpart of an interrogatory introduces a line of inquiry that is

6    separate and distinct from the inquiry made by the portion of the interrogatory that precedes it, the

7    subpart must be considered a separate interrogatory no matter how it is designated." Waterbury

8    v. Scribner, 2008 WL 2018432, *2 (E.D. Cal. May 8, 2008), citing Willingham v. Ashcroft, 226

9    F.R.D. 57, 59 (D.D.C., 2005) (internal quotation marks omitted).

10          This interrogatory pushes the limits of one request, as it concerns state and federal cases,

11   monetary compensation, withheld evidence, and employees.  Defendants state that "for purposes

12   of responding to these requests," they "will only count them as two."  ECF No. 244 at 6.

13   Defendants' objection is sustained as follows: They may count this request as two interrogatories.

14          All other objections to this request are overruled.  The court will grant plaintiff's motion

15   as to this request.

16          **3.  Auditing Documents**

17   County/SO Request No. 2, DA Request No. 1.  Plaintiff requests "[a]ll documents and

18   communications relating to policies, procedures, and practices between January 1, 1990 and

19   December 31, 2005 that concern or relate to your internal and external auditing processes and

20   reporting structures."

21          At the hearing, the parties indicated that this request was resolved in the last motion to

22   compel.  See ECF No. 243.  Thus, the court will disregard it.

23          **B.  Homicide Investigation Files**

24   County/SO/DA – Multiple Requests.  Plaintiff seeks "all documents and communications

25   concerning or related to the investigation of" the following fourteen individuals:

26   •   Gloria Killian, convicted in 1981 for felony murder (and other crimes), vacated by the

27       Ninth Circuit in 2002;

28   •   James David Majors, convicted in 1989 for first degree murders and a robbery;

1       • Charles Edward Case, prosecuted in 1993 for first degree murder and robbery;

2       • Joseph Andrew Elliot, prosecuted in 1994 for murder and assault with a deadly weapon;

3       • Kenneth Bernard Turner, investigated in 1994 for murder;

4       • Richard Alex Williams, prosecuted in 1996 for murder;

5       • David Quindt and Anthony Salcedo, prosecuted in 1999 for murder and attempted murder;

6       • Michael Willis, prosecuted in 1999 for murder;

7       • Benita Luna, prosecuted in 1999 for murder;

8       • Arthur Gene Lane, prosecuted in 2001 for murder;

9       • Eric Royce Leonard, prosecuted for multiple murders; year(s) unspecified;

10       • Jeffrey Dean Ford, prosecuted for "a series of bank robberies"; year(s) unspecified; and

11       • Bismark Dinius, prosecuted in connection with a 2006 death in a boating accident.

12  See ECF No. 231 at 7-9 (Motion to Compel, Appx. B), ECF No. 244 at 7-10.

13       Defendants object on various grounds, arguing that "plaintiff fails to establish how

14  production of the entire underlying criminal investigation (and communications) of unrelated

15  matters are relevant to plaintiff's claims."  ECF No. 244 at 17.  Defendants further argue that

16  many of these investigations/prosecutions "are not part of the Complaint" and "many of the

17  requests are irrelevant to this case, insofar as there were no findings of Brady violations, as can be

18  readily found in the filings and/or appellate decisions on these cases."  ECF No. 244 at 18.

19       At the hearing, plaintiff's counsel argued that these case files, and all related

20  communications, were discoverable because the individual defendants in this case were involved

21  in these investigations.  Without more, this is not enough.  See Rivera v. NIBCO, Inc., 364 F.3d

22  1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in

23  fishing expeditions.").  At minimum, the requested materials span a period of 1981-2006, and it is

24  unclear how a criminal case file from 1981, for instance, bears any relevance to this case.

25       Moreover, as the district court has noted, for Monell liability, "the pattern of incidents

26  must reflect 'similar constitutional violations.'  Connick, [563 U.S. at 62.  While plaintiff is not

27  required to know what an investigative case file contains before he seeks it in discovery, he must

28  make some showing of relevance to the Brady issues central to this action in order to satisfy his

1   burden in a discovery dispute.

2          At plaintiff's request, the fact discovery deadline has been extended to January 31, 2025.

3   ECF No. 258.  The court will deny plaintiff's motion as to these requests without prejudice to

4   plaintiff propounding narrower requests for similar materials.

5      **C. Training and Discipline Reports**

6      <u>DA Interrogatory No. 11, SO Interrogatory No. 12</u>.  This interrogatory seeks a description of

7   "policies, practices, and /or procedures in place from January 1, 1990 through January 1, 2005

8   relating to disciplining Your employees and/or contractors for [<u>Brady</u>] violations."  Joint

9   Statement at 18.

10     Defendants object that this request is overbroad as to time, among other objections.

11  Notwithstanding their objections, they respond: "[D]uring that timeframe, the [Entity] did not

12  have written discipline policies specific to [<u>Brady</u>] violations."  ECF No. 244 at 18.  As to the SO,

13  defendant responds that various other policies governed discipline for violation of duties.  Joint

14  Statement at 19.

15     <u>DA Interrogatory No. 12, SO Interrogatory No. 13, County Interrogatory No. 6</u>.  Same as

16  above, as to violations of "an individual's constitutional rights."  Joint Statement at 19.

17     Defendants object that this request is overbroad as to time and vague, among other objections.

18  Notwithstanding their objections, they respond that "during that timeframe, the County did not

19  have written discipline policies specific to violations of 'constitutional rights'" and that other

20  policies governed employee discipline.  ECF No. 244 at 19.

21     Defendants' training and disciplinary materials regarding <u>Brady</u> violations and/or other

22  violations of a criminal suspect's constitutional rights are relevant to this case.  For the reasons set

23  forth above, the court will sustain defendants' objection of overbreadth as to time.  All other

24  objections are overruled.

25     The court will grant plaintiff's motion as to these requests as follows: For the period of 1995-

26  2002, defendants must identify all responsive policies, practices, and/or procedures, whether

27  written or unwritten, and include a signed declaration explaining what searches and/or inquiries

28  were conducted for responsive material.  <u>See</u> ECF No. 243 at 8 (prior discovery order requiring

1   same for specified requests for production).

2        County/SO Request No. 1.  This request seeks "all documents" related to training or

3   "handing and disclosing evidence" by seven individual defendants, between January 1, 1990 and

4   December 31, 2005.  ECF No. 244 at 19.

5        The court has reviewed defendants' objections and overrules them[3].  The court will grant

6   plaintiff's motion as to this request as follows: Defendants shall produce any and all documents

7   responsive to the request. If they contend that no such documents exist, they must provide a

8   signed declaration explaining what searches and/or inquiries were conducted for responsive

9   documents.  See ECF No. 243 at 8 (prior discovery order).

10       **D.  Handling of Evidence in the Galati investigation**

11       SO Interrogatory No. 7 asks the SO to "[i]dentify all evidence collected during the Galati

12  investigation that was destroyed prior to March 13, 2020."  Joint Statement at 23.

13       Defendants cite a "property disposition report, produced herewith."  ECF No. 244 at 23.

14  Plaintiff counters that the report is "not responsive" because it "does not describe the items and

15  evidence collected; it provides numbered codes."  Joint Statement at 24.  At the hearing,

16  defendants indicated there was no "key" to the codes in the report, but it could be cross-checked

17  against another document in plaintiff's possession.  The parties should meet and confer so that

18  plaintiff can make sense of the information in the report.

19       Defendants also indicated that, as far as they know, the property disposition report reflects

20  all the Galati evidence that was destroyed after the investigation.  Defendants' counsel stated he

21  will provide plaintiff a declaration to that effect.

22       DA/SO Interrogatory No. 5 asks defendants to "[i]dentify all report numbers associated

23  with investigatory files related to the Galati investigation."  Joint Statement at 23.

24       The DA responds that it did not compile such a list and thus is unable to respond.  The SO

25  responds that "the Galati investigation is associated with" two reports that were previously

26  produced.  Joint Statement at 23-24.  At the hearing, defendants' counsel stated that one of the

27

28  _____
    [3] Defendants did not object that this request was overbroad as to time.  See ECF No. 243 at 4-5.

1   reports concerned the Galati investigation, and the other was a missing persons' report filed by

2   Galati's father.  Plaintiff's counsel stated that plaintiff also seeks all reports "related" to the Galati

3   investigation.  However, it is the court's understanding that defendants' records do not link or

4   identify "related" reports.  Related files can only be identified by poring over the Galati materials

5   and noting cases, names, etc.—a task which plaintiff can do was well as defendants.

6       DA/SO Interrogatory No. 6 asks defendants to "[i]dentify all individuals interviewed by

7   your employees during the Galati investigation."  Joint Statement at 23.

8       The DA responds that it "did not compile a list of who investigated whom or when and

9   thus is unable to respond."  The SO refers plaintiff to the previously produced report of the Galati

10  investigation.  Joint Statement at 24.

11      As above, plaintiff can read the Galati investigation file and identify the persons

12  interviewed, as well as defendants can.  As defendants have identified what appear to be key

13  reports, the court will deny plaintiff's motion as to these requests.

14      Plaintiff also contends that defendants have continued their "practice of serving unverified

15  interrogatories," not signed under oath, despite "prior explicit reprimands from Judge Barnes."

16  Joint Statement at 25.  Defendants say they will provide verifications.  Joint Statement at 26.

17  Based on the foregoing, IT IS HEREBY ORDERED THAT plaintiff's motion to compel

18  (ECF No. 231) is GRANTED IN PART and DENIED IN PART, as follows:

19      1.  DA Interrogatory No. 7; SO Interrogatory No. 9; County Interrogatory No. 6. GRANTED

20          as to the period 1995-2002.

21      2.  DA Interrogatory No. 8, SO Interrogatory No. 10, County Interrogatory No. 7.

22          GRANTED.

23      3.  County/SO/DA – Multiple Requests as to Homicide Investigation Files.  DENIED without

24          prejudice.

25      4.  DA Interrogatory No. 11, SO Interrogatory No. 12, DA Interrogatory No. 12, SO

26          Interrogatory No. 13, County Interrogatory No. 6. GRANTED as follows: For the period

27          of 1995-2002, defendants must identify all responsive policies, practices, and/or

28          procedures, whether written or unwritten, and include a signed declaration explaining

what searches and/or or inquiries were conducted for responsive material.

5. County/SO Request No. 1.  GRANTED as follows: Defendants shall produce any and all documents responsive to the request. If they contend that no such documents exist, they must provide a signed declaration explaining what searches and/or inquiries were conducted for responsive documents.

6. SO Interrogatory No. 7, DA/SO Interrogatory No. 5, DA/SO Interrogatory No. 6. DENIED.

7. No later than twenty-one (21) days from the date of this order, defendants shall respond to the granted discovery requests as set forth above.

8. Prior to filing any future motion to compel, the parties shall arrange with the undersigned's courtroom deputy to meet and confer in person, before the undersigned, in her courtroom.

Dated:  October 10, 2024

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/puckett.mtc231

16